UNITED STATES *v.* SISSETON AND WAHPETON BANDS OF SIOUX INDIANS.

SISSETON AND WAHPETON BANDS OF SIOUX INDIANS *v.* UNITED STATES.

APPEALS FROM THE COURT OF CLAIMS.

Nos. 338, 339. Argued January 7, 8, 1908.—Decided February 24, 1908.

While there are no general rules of law determining what payments are chargeable against Indian annuities, when annuities which have been confiscated on account of an outbreak of the annuitant Indians are restored, sums paid by the Government for the support of the annuitants on account of their destitution must be taken into account, and in this case the restored annuities are also chargeable with the amount of depredations during the outbreak for which the Indians were liable under a treaty made subsequently to that granting the annuity and before the outbreak.

This court affirms the judgment of the Court of Claims adjusting the claim of the Sisseton and Wahpeton Bands of Sioux Indians for their confiscated annuities restored under acts of Congress and in regard to which jurisdiction was conferred by the act of June 21, 1906, c. 3504, 34 Stat. 372.

42 C. Cls. Rep. 416, affirmed.

THE facts are stated in the opinion.

*Mr. George M. Anderson,* with whom *Mr. Assistant Attorney General Thompson* was on the brief, for the United States.

*Mr. William H. Robeson* and *Mr. Marion Butler,* with whom *Mr. Charles A. Maxwell, Mr. George S. Chase* and *Mr. Josiah M. Vale* were on the brief, for the Sisseton and Wahpeton Sioux.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a claim for annuities granted by the treaty of July 23, 1851, 10 Stat. 949, but declared forfeited by the act of February 16, 1863, c. 37, 12 Stat. 652, in consequence of a great outbreak and massacre by the Indians. The claim is made

under the Indian appropriation act of June 21, 1906, c. 3504,
34 Stat. 325, p. 372, the material part of which is as follows:

"That jurisdiction be, and hereby is, conferred upon the
Court of Claims in Congressional case numbered twenty-two
thousand five hundred and twenty-four, on file in said court,
entitled 'The Sisseton and Wahpeton bands of Sioux Indians
against the United States,' to further receive testimony, hear,
determine, and render final judgment in said cause, for bal-
ance, if any is found due said bands, with right of appeal as
in other cases, for any annuities which would be due to said
bands of Indians under the treaty of July twenty-third, eight-
een hundred and fifty-one (Tenth Statutes at Large, page nine
hundred and forty-nine), as if the Act of forfeiture of the
annuities of said bands, approved February sixteenth, eighteen
hundred and sixty-three, had not been passed; and to ascertain
and set off against the amount found to be due to said Indians,
if any, all payments or other provisions of every name or na-
ture made to or for said bands by the United States, or to or
for any members thereof, since said Act of forfeiture was passed,
which are properly chargeable against unpaid annuities.

"Upon the rendition of such judgment and in conformity
therewith, the Secretary of the Interior is hereby directed to
determine which of said Indians now living took part in said
outbreak and to prepare a roll of the persons entitled to share
in said judgment by placing on said roll the names of all living
members of the said bands residing in the United States at the
time of the passage of this Act, excluding therefrom the names
of those found to have participated in the outbreak; and he is
directed to distribute the proceeds of such judgment, except
as hereinafter provided, per capita to the persons borne on
the said roll; and the court shall consider the evidence now on
file in said cause in connection with such other evidence as
may hereafter be adduced therein."

The act of June 21, 1906, was passed in pursuance and ex-
tension of an earlier act of March 3, 1901, c. 832, 31 Stat. 1058,
p. 1078, which gave the Court of Claims full jurisdiction to

report to Congress what members of these bands of Indians were not concerned in the depredations of the outbreak, and to report what annuities would now be due to the loyal members if the act of forfeiture had not been passed. The court was "further authorized to further consider, ascertain, and report to Congress what lands, appropriations, payments, gratuities, or other provisions have been made to or for said bands or to any of the members thereof since said Act of forfeiture was passed." "And if said court shall find that said bands preserved their loyalty to the United States, they shall ascertain and state the amount that would be due to said Indians on account of said annuities had said Act of Congress of February sixteenth, eighteen hundred and sixty-three, not been passed, stating in connection therewith what credits shall be charged against said annuities on account of the lands, appropriations, payments, gratuities or other provisions as hereinbefore stated." A petition was filed, but the court found that it was impossible to determine what members of these bands remained loyal to the United States; but that a large majority, if not all, aided and abetted the massacres and depredations. 39 C. Cls. Rep. 172. Thereupon the later act was passed, referring to the above petition, and the present supplemental petition was filed.

The Court of Claims stated the account and ordered a judgment for the balance, from which both parties appeal. The account is as follows:

CREDITS.

| | |
|---|---|
| By fifty installments of $73,600, treaty July 23, 1851 ...... | $3,680,000 00 |
| By amount allowed to chiefs for removal and subsistence by said treaty ........................................ | 275,000 00 |
| By amount allowed to chiefs for manual labor schools, etc... | 30,000 00 |
| | $3,985,000 00 |

DEBITS.

Item.

1. To twelve installments of annuity appropriated under the treaty of 1851 (10 Stat. L., 949) prior to outbreak, less $104.66 returned to the Treasury ($883,200—104.66),

| | | |
|---|---:|---:|
| Amount credits carried forward | | 3,985,000 00 |

Item.
$883,095.34, less $122,509.12 appropriated but not paid at date of forfeiture......... $760,586 22
(See p. 17, Senate Doc. 68, for various statutes.)

2. To amount paid to the chiefs for removal and subsistence, and for manual labor schools under the treaty of 1851................. 305,000 00

3. To amount appropriated and unpaid at date of forfeiture act, but forfeited and afterwards expended for damages growing out of the outbreak of 1862–3 (12 Stat. L., 652)... 122,509 12

4. To one-half of $100,000 advance annuity appropriated February 16, 1863 (12 Stat. L., 652)................................... 50,000 00

5. To one-half amount paid to scouts and soldiers of the four bands (26 Stat. L., 1038; 27 Stat. L., 624; 28 Stat. L., 889)........... 103,176 65

6. To one-half amount expended for damages and for support, but not for removal...... 807,824 71
(See p. 20, Senate Doc. 68, for various statutes.)

7. To amount paid for support, etc., under the treaty of February 19, 1867.............. 464,953 40
(See p. 17, Senate Doc. 68, for various statutes making the appropriations.)

8. To amounts paid under agreement of December 12, 1889.......................... 581,978 37
                                                    $3,196,028 47

Leaving a balance due of........................ $788,971 53

The amount of the unpaid annuities is not in dispute, but the questions raised by the appeals concern the items of set-off and involve the principle upon which they are to be charged. The Indians contend that only sums specially charged by Congress against annuities come into the account, while the United States goes to the opposite extreme. We agree with the Court of Claims that the contention of the Indians, at least, must be rejected, for the reason stated by it, that if it was correct Congress did not need the help of the court; the figures were patent. Furthermore the language of the act implies that the court is called upon for an active exercise of judicial reason

and to do something that has not yet been done. It is "to set off" all payments to said bands or to any members thereof since the acts of forfeiture which are properly chargeable against the unpaid annuities. The result is assumed to be uncertain, as the judgment is to be for the balance, if any is found due.

There are no general rules of law established for deciding what payments properly are chargeable against Indian annuities. The fact that payments of certain kinds, or gratuities, have been granted in time of peace in addition to annuities is not conclusive. There had been an Indian war. The United States in passing these acts was doing what it pleased. In the earlier statute it plainly indicated that the most sweeping deductions, including gratuities, were to be made from its possible bounty. In the later one it qualified the deduction of payment by the words "which are properly chargeable against said unpaid annuities," it is true. But the careful particularity of the direction to set-off "all payments or other provisions of every name and nature," even if qualified as to the bands as well as to the particular members to whom some payments properly left out of consideration had been made, shows that large set-offs still were expected. It is said that the court was to proceed "as if the act of forfeiture had not been passed." But that was only in ascertaining the amount of annuities that would be due in that case and in rendering a judgment that otherwise would be unauthorized. Those words do not require the court to treat all payments upon the fiction that nothing had happened, or to give them a different complexion from that which they had when they were made. Common sense, the then recent decision of the Court of Claims as to the general conduct of the bands and the position of the words in the section, show that they could have had no such intent.

It follows from what we have said and from a consideration of the nature of the payments and the circumstances, which the Court of Claims rightly considered, as well as from the treaties and acts of Congress, that the claimants properly were charged with their share of payments on account of depredations. On

general grounds of fairness such payments are properly chargeable against the sum that the United States by its condonation consented to pay. Congress as well as the court is of that opinion, for the appropriation of the annuities to the indemnification of persons whose property had been destroyed by the Indians was declared just, and two-thirds of the sums payable then and the next year were applied to that end by the forfeiture act of February 16, 1863. 12 Stat. 652. In this connection the act is as important as ever it was. See further act of March 3, 1885, c. 320. 23 Stat. 344. Again, by a treaty of June 19, 1858, article 6, 12 Stat. 1037, 1039, later than that granting the annuities, which was made in 1851, the Indians had agreed that in case of depredation it should be paid for out of their moneys in the hands of the United States. The effect of this treaty as against those breaking it is not to be got rid of by dignifying their acts with the name of war, while at the same time the court is asked to treat all that was done by the United States as if there had been unbroken peace. The successful party to a war is apt to demand indemnity, and when that party is doing an act of grace and restoring annuities forfeited because of damage done it is absurd to ask that it should leave consideration of the charge for damage out of account. Some further arguments of detail may be passed unnoticed by reason of the general point of view from which we regard the case. We may add here that, as we do not go behind the findings of fact, *McClure* v. *United States*, 116 U. S. 145; *District of Columbia* v. *Barnes*, 197 U. S. 146, 150, there has been some waste of energy in arguing from public documents of which we are asked to take notice, and that we see no reason to revise the finding that the claimants should be charged with half the total payments of which their share is to be set off.

We pass to the items of the account. Item 1 of the debits is admitted to be correct, except that the court twice deducted $104.66, once expressly, the second time in the $122,509.12 from the gross debits, $883,200. The item should be $760,690.88.

We perceive no reason for questioning item 2.

Items 3 and 4 are disposed of by what we have said. The United States admits a repetition of the mistake mentioned under item 1 in item 4.

Item 5 is disputed only as charging one-half instead of one-sixth, alleged to be the fair proportion, upon evidence properly not reported, and found by the Court of Claims to be untrustworthy. As we have said, we see no reason for not accepting the conclusion of the Court of Claims.

Item 6 needs mention only because it embraces expenditures for support, which, it is said, by the general practice would be granted alongside of the annuities were they running. The question of damages has been disposed of. The other will be dealt with in connection with item 7.

Item 7 is one of the chief objects of the claimants' attack. By the treaty of February 19, April 22, 1867, 15 Stat. 505, the claimants ceded rights of way to the United States, and the United States, in consideration of the cession, the services of the friendly bands, and the forfeiture of their annuities, purported to set aside for them certain reservations. This was by Articles 2–4. Article 6 was as follows: "And further, in consideration of the destitution of said bands of Sisseton and Warpeton Sioux, parties hereto, resulting from the confiscation of their annuities and improvements, it is agreed that Congress will, in its own discretion, from time to time, make such appropriations as may be deemed requisite to enable said Indians to return to an agricultural life," etc. Payments under Article 6 make up item 7. It is argued that the Indians already owned the land set aside for them, that there was no consideration for their grant except the promise in Article 6, that the destitution of the Indians was not a consideration to the United States and hence again that the promise should be set against the cession and that they ought not to be charged with this sum. But without going outside the record for other matters of dispute, it is enough to say that the question is not as to the facts, but as to the assumption and purport of the document. The treaty makes the assignment of the reserva-

tion, be it better or worse, the consideration for the cession by the Indians, and the agreement in Article 6 a gratuitous promise induced by consideration of the Indians' want. The words "in consideration of" do not import a technical consideration, such as is needed in a private bargain not under seal, but the inducement that led Congress to make the promise. It indicates the only inducement, and a different one cannot be substituted in its place, on the ground that assumpsit would not lie on the one named.

By the words of the treaty then the sixth article promised the payments in question because the claimants were in want because their annuities had been confiscated. Or, striking out the middle term and looking to the result, the payments were made because the annuities had been confiscated; that is to say, so far as appears, they would not have been made except for that cause. But, if so, then, when the annuities are restored, the sums paid on the footing that the annuities were lost must be taken into the account. It does not matter whether the Indians had a demand in conscience against the United States for their cession or not, or whether or not such demands were settled by subsequent treaties; the sum stood on its own ground and must be dealt with on the footing on which it was paid. If further argument is necessary one might be drawn from the reference to House Document 1953, Fiftieth Congress, First Session, in Article 3 of the agreement of December 12, 1889, ratified by the act of March 3, 1891, c. 543, § 26, 26 Stat. 989, pp. 1035, 1037, an act not repealed by those under which this suit is brought. But as this document is not made part of the report and is said not to have been before the Court of Claims, we do not care to invoke for this or other purposes a help that the decision does not seem to us to need.

As to the payments for support charged in item 6, they are to be considered in the light of the act of forfeiture and the attitude of Congress indicated in Article 6 of the treaty just discussed. The Indians were in the position of people having a recognized claim. They were dependents because of the

forfeiture.   Payments made for their support in such circumstances cannot be compared to those that may have been made to tribes in good standing.   It is mere conjecture to inquire whether similar allowances might have been granted if they had kept the peace.   They were made in fact because by reason of the forfeiture the Indians must be supported or starve.   The considerations that apply to Article 6 apply, although it must be admitted less strongly, to other payments for support and the like.   The act of 1901, 31 Stat. 1058, p. 1078, cannot be left wholly out of sight in construing that of 1906, and as has been said, that act contemplated that every gratuity should be brought in.   We are not prepared to overrule the decision of the Court of Claims on this point.

Item 8 is not disputed.   There are some further matters of detail which we do not discuss, but have not failed to consider. Upon the whole case and in view of the cross appeal of the United States we are of opinion that under the judgment below the claimants came off as well as they reasonably could expect.   If we were to follow the claimants outside the record, some of the questions raised by the United States might be serious, but as the case stands we are of opinion that the judgment should be affirmed, with the correction mentioned under item 1.

*Judgment affirmed.*

MR. JUSTICE MCKENNA dissents.