## LOWER SIOUX INDIAN COMMUNITY IN MINNESOTA et al.

v.

## The UNITED STATES.

### No. 363.

United States Court of Claims.

July 2, 1980.

Marvin J. Sonosky, Washington, D. C., attorney of record, for plaintiffs. Lloyd B. Miller and Sonosky, Chambers & Sachse, Washington, D. C., of counsel.

A. Donald Mileur, Washington, D. C., with whom was Asst. Atty. Gen. James W. Moorman, Washington, D. C., for defendant. Bernard M. Sisson, Washington, D. C., of counsel.

Before DAVIS, NICHOLS and BENNETT, Judges.

## ON DEFENDANT'S MOTION TO DISMISS

PER CURIAM:

Plaintiff Indian bands, representing the Sioux of the Mississippi,[1] timely filed a petition before the Indian Claims Commission claiming *inter alia* an accounting from the Government of tribal funds and properties in the control or management of the United States. Among the items for which accounting was sought were annuities due the tribes under the Treaties of September 29, 1837, 7 Stat. 538 (with the Medawakanton), of July 23, 1851, 10 Stat. 949 (with the Sisseton and Wahpeton), and of August 5, 1851, 10 Stat. 954 (with the Medawakanton and Wahpakoota).

---

1. These Sioux, also known as the Eastern Sioux, consisted of four bands divided into two groups: the Sisseton and Wahpeton Bands (usually dealt with together by the Government as part of one group) and the Medawakanton and Wahpakoota Bands (normally dealt with together by the Government as a group, and often called the Santee).

Before the Commission, defendant raised the defense of *res judicata* as to these particular accounting claims, contending that the matter of these treaty annuities had been litigated and was open to full litigation (under special jurisdictional acts) in *Sisseton and Wahpeton Bands of Indians v. United States*, 42 Ct.Cl. 416 (1907), aff'd 208 U.S. 561, 28 S.Ct. 352, 52 L.Ed. 621 (1908), and *Medawakanton Indians v. United States*, 57 Ct.Cl. 357 (1922). The Commission ruled against this defense. 36 Ind. Cl.Comm. 295, 326–27, 341 (1975). That holding, which did not decide that the Government was liable, was not subject to interlocutory appeal to this court under the terms of the Indian Claims Commission Act. 25 U.S.C. § 70s(b) (1976). After the case was transferred here in connection with the Commission's dissolution, the defendant (with the implicit consent of the trial judge and the plaintiffs) filed the present motion to dismiss these particular accounting claims as barred, under the doctrine of *res judicata*, by this court's prior decisions in 1907 and 1922.[2]

Under the three treaties the Eastern Sioux ceded to the United States land in Minnesota, South Dakota and Iowa. In return, the Federal Government undertook, among other things, to pay various types of annuities to the Indians, some in perpetuity and some for a term of years.[3] In 1863 after an Indian uprising the previous year in Minnesota in which many white inhabitants were killed or injured and property damaged, Congress forfeited all unpaid and future obligations then due the Indians under the treaties, including the unpaid annuities. Act of February 16, 1863, 12 Stat. 652.

Almost forty years later, Congress gave this court jurisdiction to determine and report to Congress what members of the Sisseton and Wahpeton bands remained loyal during the 1862 uprising, and what annu-

ities provided by the Treaty of July 23, 1851, *supra*, would be due those loyal members if the forfeiture act of 1863 had not been passed. The court reported that, on the evidence before it, it could not determine which individual tribal members remained loyal. *The Sisseton and Wahpeton Bands v. United States*, 39 Ct.Cl. 172 (1904).

Congress then enacted another special jurisdictional act (Act of June 21, 1906, 34 Stat. 325, 372) extending this court's jurisdiction in the *Sisseton and Wahpeton* case to authority to "render final judgment * * for balance, if any is found due said bands * * * for any annuities which would be due to said bands of Indians under the treaty of July [23, 1851], as if the Act of forfeiture of the annuities of said bands [Act of Feb. 16, 1863] had not been passed * * *." *Id.* The jurisdictional act also authorized offsets against the award and empowered the Secretary of the Interior to determine which band members did not participate in the 1863 attack, and to distribute the award to them. *Id.*

The 1907 opinion and judgment of the court for the plaintiff, which defendant invokes, resulted from that 1906 special jurisdictional act. *Sisseton and Wahpeton, supra*, 42 Ct.Cl. at 418–19.

The Medawakanton and Wahpakoota bands did not receive their special jurisdictional statute until 1917. It was similar to the statute for the Sisseton and Wahpeton group and authorized this court to "render final judgment for any balance that may be found due the Medawakanton and Wahpakoota Bands of Sioux Indians * * * for any annuities that may be ascertained to be due to the said bands of Indians under and by virtue of [the treaties of September 29, 1837 and August 5, 1851] as if the act of forfeiture of the annuities of said bands approved February [16, 1863] had not been passed * * * *"[4] Act of March 14, 1917,

---

2. Since the Commission's ruling was not appealable, we consider that the Government's motion to dismiss was an appropriate method of presenting this dispositive issue to the court.

3. The 1837 treaty provided for some 20-year annuities and a perpetual annuity; the July

1851 treaty provided for a 50-year annuity; the August 1851 treaty also provided for a 50-year annuity.

4. The court was also specifically directed to include and ascertain the amount of accrued annuities under the 1837 treaty up to the date

39 Stat. 1195, 1196. The 1922 decision of the court granting an award under that special jurisdictional act, *Medawakanton, supra*, 57 Ct.Cl. 357, is the other of the judgments on which defendant now relies.

The Government's motion to dismiss contends that the claim now asserted by plaintiffs under the Claims Commission Act for an accounting of the treaty annuities is the same claim as was or could be presented in the 1907 and 1922 cases in this court, and is therefore barred under the general principle of claim preclusion (or *res judicata*) that a plaintiff who has received a judgment cannot thereafter maintain another action on that same claim or any part thereof, including any portion of the claim which could have been, but was not, urged in the prior suit. *See Container Transport Int'l, Inc. v. United States*, 199 Ct.Cl. 713, 717, 468 F.2d 926, 928 (1972); ALI, Restatement (Second) of Judgments, §§ 47, 61, 61.1 (Tent. Draft Nos. 1 and 5 (1973) (1978)).[5]

We do not know the full extent of plaintiffs' monetary demands (with respect to the treaty annuities) in its current accounting claim under the Claims Commission Act. But we are told that it includes at least the following items: (a) the forfeiture act of 1863 constituted an uncompensated Fifth Amendment taking of plaintiffs' property; (b) certain payments of annuities prior to the forfeiture act were made late; (c) some of the pre-1863 annuities were paid to tribes or groups other than the ones entitled to them; and (d) the Government did not comply with certain of the treaty provisions as to how some of the pre-forfeiture annuities were to be distributed or spent, or the manner of their distribution or expenditure. Defendant maintains, and plaintiffs deny, that matters of this type could have been raised in the prior suits in this court under the two special jurisdictional acts of 1906 and 1917.

As we read those special acts and are required to read them, they did not cover pre-1863 claims of the above character which plaintiffs now seek to present as part of their accounting claim.[6] The text of the statutes is quite limited, expressly linking jurisdiction to the direct impact of the forfeiture act on the treaty annuities. The *Sisseton and Wahpeton* legislation gave this court jurisdiction only to determine the balance of annuities "which would be due to said bands of Indians" under their 1851 treaty "as if the [1863] Act of forfeiture of the annuities of those bands * * * had not been passed * * *." 34 Stat. 325, 372 (1906). Similarly, the Medawakanton and Wahpakoota act empowered the court to give judgment "for any balance that may be found due" the two bands "for any annuities that may be ascertained to be due to the said bands of Indians under [their 1837 and 1851 treaties] as if the [1863] Act of forfeiture of the annuities of said bands * * * had not been passed * * *." 39 Stat. 1195, 1196 (1917). These provisions seem to us to confine the court's jurisdiction over the Indians' affirmative claims to the amount of the unpaid annuities forfeited by the 1863 legislation.

The offset provisions of the two special acts confirm this construction. The *Sisseton and Wahpeton* statute allowed only offsets "which are properly chargeable against *said unpaid annuities*", 34 Stat. 325, 372 (1906), (emphasis added), and the *Medawakanton and Wahpakoota* act permitted offset only of moneys paid or expended by the United States for those Indians "since the treaties were abrogated by the Act of February [16, 1863] * * *." 39 Stat. 1195, 1196 (1917). If pre-1863 paid annuities were open to review and appraisal for their

---

of judgment, "and the capital sum of said annuity, which shall be in lieu of said perpetual annuity granted in said treaty * * *." 39 Stat. 1195, 1196 (1917).

5. Defendant's motion puts forward only the defense of *res judicata* (claim preclusion). Collateral estoppel (issue preclusion) as to individual issues actually decided in the earlier cases is not now asserted.

6. We refer to present claims with respect to any portion of any of the annuities (referred to in note 3, *supra*) which were paid prior to the forfeiture act.

propriety, Congress would not have limited offsets to post-1863 unpaid annuities.[7]

Defendant argues that this court could not have interpreted the special acts in this restricted a way because in each case it went back to the beginning of payment of annuities under the particular treaty and carefully credited the Indians with all those annuities paid before the forfeiture act. But it is plain to us that this was simply a formal mechanism for determining the annuities which were unpaid as a result of the forfeiture statute. In the case under the 1906 act, the court pointed out that with respect to the credit to the Indians for annuities actually paid prior to forfeiture "there never was and *never could be* any dispute", (emphasis added), *Sisseton and Wahpeton, supra,* 42 Ct.Cl. at 426, and it devoted the whole of the decisional part of its opinion to the offset provision and to claimed offsets. In the second case (under the 1917 act) the opinion simply says: "The statement of account *takes the form of* credit and debit from the beginning of the treaties instead of commencing with 1863." *Medawakanton, supra,* 57 Ct.Cl. at 376. (emphasis added). There is nothing in either opinion (or in the Supreme Court's decision affirming the earlier ruling, *Sisseton and Wahpeton, supra,* 208 U.S. 561, 28 S.Ct. 352, 52 L.Ed. 621) suggesting that the Indians could have raised the kind of contention—as to problems with the already-paid annuities for which they were credited, or that the 1863 forfeiture act was an uncompensated taking—they now wish to assert in this proceeding.

Finally, we are required by the canons for construing special Indian jurisdictional acts which prevailed in the earlier part of this century to interpret the 1906 and 1917 acts narrowly rather than broadly, and to limit their reach to their terms. *See Blackfeather v. United States,* 190 U.S. 368, 376, 23 S.Ct. 772, 47 L.Ed. 1099 (1903); *United States v. Mille Lac Band of Chippewa Indians,* 229 U.S. 498, 500, 33 S.Ct. 811, 812, 57 L.Ed. 1299 (1913); *Sioux Tribe of Indians v. United States,* 97 Ct.Cl. 613, 663–65 (1942), *cert. denied,* 318 U.S. 789, 63 S.Ct. 992, 87 L.Ed. 1155 (1943). *Cf.* W. Cowen, P. Nichols, M. Bennett, The United States Court of Claims—A History, Part II ("Origin—Development—Jurisdiction, 1855–1978"), 216 Ct.Cl. 68–73 (1978); *Menominee Tribe of Indians v. United States,* 221 Ct.Cl. ——, ——, 607 F.2d 1335, 1342–43 (1979), *cert. denied,* 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 786, 1980. Under those principles, we would have to stretch the special acts unduly to encompass the wide breadth the Government now sees in them some fifty to seventy years after their passage and implementation.[8]

For these reasons we must reject the defendant's plea of *res judicata* or claim preclusion. The accounting claims plaintiffs now wish to present were not part of any claim of which this court had jurisdiction under the 1906 and 1917 acts.[9] We pass only on the defense of claim preclusion, leaving open for the further proceedings any problem of issue preclusion (or collateral estoppel), *i. e.* that a particular issue was

---

7. It is significant, too, that the special acts plainly did not confer any equity jurisdiction on this court. An accounting claim like the present proceeding under the Claims Commission Act is an equitable claim. *Klamath and Modoc Tribes v. United States,* 174 Ct.Cl. 483, 487–88 (1966). If the whole course of the Government's dealing with the treaty annuities, from their beginning, was to be open for litigation under the special jurisdictional acts, it would seem that Congress would have given the court the equity jurisdiction to entertain an accounting.

8. We do not intimate one way or another whether there is any merit or validity to plaintiffs' present claims. All we hold is that they

could not be presented to the court under the earlier jurisdictional acts. Presumably this court now has adequate general jurisdiction under the Indian Claims Commission Act to consider these claims. If they are to be rejected, it would be on their merits or other nonjurisdictional basis, or possibly because plaintiffs have invoked the wrong clause of the Claims Commission Act.

9. In holding that res judicata (claim preclusion) does not bar the present accounting we cover all the annuities established by the three treaties, including the 20-year annuities, the 50-year annuities, and the perpetual annuity.

actually litigated and decided in the earlier suits.

Defendant's motion to dismiss that part of the plaintiffs' accounting claim dealing with the treaty annuities is denied.