## McCLURE *v.* UNITED STATES.

ORIGINAL MOTION IN A CASE PENDING IN THIS COURT ON APPEAL FROM THE COURT OF CLAIMS.

Argued December 8, 1885.—Decided December 21, 1885.

An act of Congress specially referring to the Court of Claims a paymaster's claim for credits and differences in his accounts with the United States, and providing that the evidence of the claimant may be received, and that, if the court shall be satisfied that just and equitable grounds exist for cred-

its claimed by him, it shall make a decree setting forth the amount for which he shall receive credit, confers no equity jurisdiction upon that court, but only the ordinary jurisdiction of the subject as a court of law, subject to be proceeded with as in ordinary suits, and subject to the rules regulating appeals in ordinary judgments.

This court will not remand to the Court of Claims a case at law, with directions to return whether certain distinct propositions in requests for findings of fact, presented to that court at the trial of the case, are established and proved by the evidence, if it appears that the object of the request to have it so remanded is to ask this court to determine questions of fact on the evidence.

This was a motion to order up evidence from the Court of Claims, accompanied by an alternative motion to order that court to make specific findings of fact. The facts which make the case are stated in the opinion of the court.

*Mr. Jeremiah M. Wilson* for the motion.

*Mr. Assistant Attorney-General Maury* opposing.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is a motion for an order on the Court of Claims "to transmit to this court all the evidence on which the cause was heard and determined" in that court, or, if such an order cannot be made, that the cause be remanded, "with directions to make return to this court, whether or not the evidence upon which said cause was heard and determined does, or does not, establish and prove the several separate and distinct propositions of fact contained in the requests for findings of fact presented . . . to the said court before the trial of said cause, and upon the motion for a new trial, or a rehearing of said cause, that the said court shall be directed to find specifically all the material facts involved in the case."

The suit was brought under the following act of Congress, passed February 24, 1874, entitled "An Act for the relief of Colonel Daniel McClure, Assistant Paymaster-General:"

"*Be it enacted, &c.*, That the claims of Daniel McClure, Assistant Paymaster-General, for credits on differences in his accounts as paymaster, under his official bond, dated March

second, eighteen hundred and fifty-nine, shall be, and are
hereby, referred to the Court of Claims, with jurisdiction to
hear and determine said claims. And if the said court shall
be satisfied from the evidence that any of the moneys charged
to him were not in fact received by him, or that other just and
equitable grounds exist for credits claimed by him, it shall
make a decree, setting forth the amount to which the said
McClure shall be entitled to receive credit; upon which the
proper accounting officers of the Treasury shall allow him the
amount so decreed as a credit in the settlement of his accounts :
*Provided*, That the testimony of said McClure shall be received
in his own behalf by said court, and until the determination of
said cause the final adjustment of his said accounts is sus-
pended : *And provided further*, That an appeal shall be al-
lowed to either party as in other cases." 18 Stat. 531.

In his petition filed in the cause, McClure made three claims
for credit, to wit. : 1, for $1183.13, money on deposit to his ·
official credit as paymaster with the Assistant Treasurer of the
United States at New Orleans, which was seized by the insur-
gent forces of the Confederate States and appropriated to their
own use without any fault on his part; 2, for $289.05 taken.
from his possession by a military force acting for and in behalf
of the Confederate authorities ; and 3, for $1000, an over addi-
tion made of pay-rolls by his clerk, which in no manner inured ·
to his personal benefit. There were also three claims for differ-
ences between his accounts and those of the United States,
being for moneys charged to him which as he alleged were
not in fact received, to wit. : 1, $1432.48, said to have been
transferred to him by J. L. Hewitt; 2, $25,000 by C. S. Steven-
son ; and 3, $4993 by V. C. Hanna.

The Court of Claims has found as facts, 1, that the sum of
$289.05 was taken from McClure by an armed force in charge .
of one of the Commissioners of the State of Texas, while it was
in his hands as government money ; and 2, that the sum of
$1183.13 was turned over by the Assistant Treasurer of the ·
United States to the Confederate States while it was on deposit
with him to the credit of McClure as paymaster. As to the
sum of $1000, it is found that McClure stated an account show-

ing payments made to troops and accompanied the same with vouchers, one of which was overadded $1000, and he got credit at the time for the over addition as for money paid out. As to the several items of differences, it is found that the parties by whom the transfers were respectively supposed to be made had each obtained a receipt from McClure for the amount stated, and that they were allowed credit therefor in the settlement of their own accounts at the Treasury. As to the moneys taken by the Confederate authorities, the court was satisfied from the evidence that just and equitable grounds existed for their allowance as credits. As to the over addition, the court was not satisfied from the evidence that any just and equitable grounds existed for the credit thereof to McClure; and as to the several amounts specified in the receipts obtained by the different parties, the court was not satisfied from the evidence that the moneys charged to McClure by the United States were not in fact received by him, or that other just and equitable grounds existed for giving him credit for these amounts.

1. As to bringing up the evidence.

It is not pretended that this can be done unless the statute under which the suit is brought takes the case out of the operation of our rules regulating appeals from the Court of Claims. The original act which gave the right of appeal from the Court of Claims to this court was passed March 3, 1863, and provided that the appeals should be "under such regulations as the Supreme Court may direct." 12 Stat. 766, ch. 92, sec. 5. This provision is still found in § 708 of the Revised Statutes. At the December Term, 1865, this court adopted certain rules for the regulation of such appeals, and Rule 1 was as follows:

"RULE 1. In all cases hereafter decided in the Court of Claims in which, by the act of Congress, such appeals are allowable, they shall be heard in the Supreme Court upon the following record, and none other:

"1. A transcript of the pleadings in the case, of the final judgment or decree of the court, and of such interlocutory orders, rulings, judgments, and decrees as may be necessary to a proper review of the case.

"2. A finding of the facts in the case by said Court of

Claims, and the conclusions of law on said facts on which the court founds its judgment or decree.

" The finding of the facts and the conclusions of law to be stated separately and certified to this court as part of the record:

" The facts so found are to be the ultimate facts or propositions which the evidence shall establish, in the nature of a special verdict, and not the evidence on which those ultimate facts are founded. See *Burr* v. *Des Moines Co.*, 1 Wallace, 102."

This rule was amended in some particulars at the December Term, 1872, but not in a way to affect the present case. It has been in force substantially in its original form from the time of its adoption until now, and has always been strictly adhered to. Such being the case, when Congress passes a special statute allowing a suit to be brought in the Court of Claims, with a right of appeal to this court, the appeal will be governed by the rules applicable to cases arising under the general jurisdiction of the court, unless provision is made to the contrary.

In *Harvey* v. *United States*, 105 U. S. 671, the suit was brought under a statute passed April 14, 1876, 19 Stat. 490, ch. 279, which authorized the Court of Claims " to proceed in the adjustment of the accounts between said claimants and the United States as a court of equity jurisdiction ; and may, if according to the principles of equity jurisprudence in its judicial discretion, reform said contract and render such judgment as justice and right between the claimants and the said Government may require." An appeal to this court was also given, and we held that, as the suit was to be in equity, the parties were entitled to an appeal in equity, which should bring up for review the facts as well as the law. But in *Tillson* v. *United States*, 100 U. S. 43, where the court was " authorized and directed to . . . ascertain, determine, and adjudge the amount equitably due said firm, if any, for such loss or damage," we decided that " the reference was made to the court, as a court, and not to the judges as arbitrators. The determination is to be made according to the fixed rules which govern that court in the adjudication of causes, and not at the

discretion of the judges. The same principles of jurisprudence, and the same statutory regulations as to practice, are to be applied here that would be if the case had come into the court under its general jurisdiction. It is to be ascertained and determined. what, if anything, is due the claimants from the government, according to the rules of law applicable to the settlement in that court of controversies between the government and its citizens. . . . To our minds the word 'equitably,' as here used, means no more than that the rules of law applicable to the case shall be construed liberally in favor of the claimants."

This suit clearly comes within the principle of *Tillson's Case.* It is in the nature of a defence to an action at law brought by the United States to recover the balance claimed to be due upon the account as stated at the treasury. The statute requires the court to hear and determine judicially, 1, whether the disputed sums charged to McClure were in fact received by him, and, 2, whether any other just or equitable grounds exist for the credits claimed by him. The statute under which the Court of Claims is organized would have been enough to give that court jurisdiction of the claims for credit on account of the moneys seized by the Confederate authorities. Rev. Stat. § 1059, clause 3, and § 1062. But under that statute McClure could not have given testimony in his own behalf. The special act relieves him from that disability and allows him to join his claims for other errors with his claims for losses by capture, &c., and thus have the whole matter determined in one suit; but, save as to his competency as a witness, and possibly an injunction to construe the rules of law liberally in his favor, the practice of the court under its general jurisdiction has not been altered.

Some stress was put in argument upon the use of the word " decree " in the statute, and it was insisted that, as this is a term technically applicable to proceedings in equity, a suit in equity must have been contemplated. To our minds this word has no special significance here. For it is provided in § 1062 of the Revised Statutes, that if, in a suit begun under clause 3 of § 1059 of the Revised Statutes, the court ascertains that the

loss sued for had been without fault or negligence on the part of the officer, "it shall make a decree setting forth the amount thereof, and upon such decree the proper accounting officers of the treasury shall allow to such officer the amount so decreed, as a credit in the settlement of his accounts;" and it is evident that the draughtsman of the present statute must have had the other before him when he was doing this part of his work, and followed it for the sake of uniformity. We have never known it to be contended that under the old law such a suit was to be looked upon as a suit in equity. It is clear, therefore, that this motion in its first alternative must be denied.

2. As to remanding the cause for further findings.

At the time of the promulgation of Rule 1, a copy of which has already been given, reference was made to the case of *Burr* v. *Des Moines Co.*, 1 Wall. 99, 102, as indicating what the finding of facts there provided for must contain. In that case, what was called "an agreed statement of facts" appeared in the record, and the question was as to whether it could be considered by this court. Upon this subject it was said: "The statement of facts on which this court will inquire, if there is or is not error in the application of the law to them, is a statement of the ultimate facts or propositions which the evidence is intended to establish, and not the evidence on which those ultimate facts are supposed to rest. The statement must be sufficient in itself, without inferences, or comparisons, or balancing of testimony, or weighing evidence, to justify the application of the legal principles which must determine the case. It must leave none of the functions of a jury to be discharged by this court, but must have all the sufficiency, fulness, and perspicuity of a special verdict. If it requires the court to weigh conflicting testimony, or to balance admitted facts, and deduce from these the propositions of fact on which alone a legal conclusion can rest, then it is not such a statement as this court can act upon."

In *United States* v. *Pugh*, 99 U. S. 265, the suit was brought under the abandoned and captured property act, and the main controversy was as to whether the proceeds of the sale of the property had actually been paid into the treasury. There was

no direct proof to this effect, and the court, instead of stating positively in its findings that such a payment had been made, set out all the circumstantial facts established by the evidence tending to show a payment, and gave judgment against the United States. When the case got here on appeal, it was claimed that the findings were not sufficient to support the judgment, because it did not appear affirmatively that the proceeds of the property had actually been paid into the treasury. But we held otherwise, because there was nothing left for us to determine but the necessary legal effect of the circumstantial facts found, and in doing so we said " that, when the rights of the parties depend upon circumstantial facts alone, and there is doubt as to the legal effect of the facts, it is the duty of the court, when requested, to so frame its findings as to put the doubtful question into the record. This would not require us on appeal to decide upon the weight of evidence. That is done in the court below when the particular fact is found which the evidence tends to prove. The effect of mere evidence stops when the fact it proves is established. After that, the question is as to the effect of the fact; and when the evidence in a case has performed its part, and brought out all the facts that have been proved, these facts thus established are to be grouped and their legal effect as a whole determined." But in *The Francis Wright*, 105 U. S. 381, 387, where the question was as to the kind of facts the court could be required to put in its findings, we said it did not include " mere incidental facts which only amount to evidence bearing on the ultimate facts of the case." Questions depending on the weight of evidence must be conclusively settled below.

Applying these rules to the present case, we find that, as to the several disputed items of money charged against McClure, his only defence is that he never received them. If received, he is accountable. Upon the hearing, his receipt for each of the several sums was produced. The genuineness of his signature was not denied in any case, but he offered evidence tending to prove that he did not in fact get the money. Against this, other evidence was offered on the part of the government, and the question for determination below was whether the

testimony in his behalf was sufficient to overcome the receipts, and the evidence in corroboration of them. The finding was against him. What he wishes incorporated into the record now are, the incidental facts and circumstances testified to in his behalf which, when weighed as evidence, he thinks will overcome the showing against him. In other words, he wishes the record so made up that we can put on one side the receipts and the evidence in support of them, and on the other the evidence on which he relies, and determine which preponderates. Clearly there is nothing in Pugh's case which supports the right to any such findings. In that case there was no question of preponderance. There was no "balancing of testimony or weighing of evidence." The court was not required "to weigh conflicting testimony or balance admitted facts." All that had to be done was to declare the law on established facts all in harmony. Here, if the additional findings asked for are sent up, the question for us to determine will be, the comparative weight as evidence of the facts found on one side with those found on the other. In other words, whether the evidence offered on the part of McClure is sufficient to overcome the effect as evidence of his receipts, and the other testimony against him. The rule contemplates no such practice. All we can do is to declare the law upon facts which, so far as we are concerned, must be taken to be undisputed.

As to the proposed findings, with a view to ascertaining the existence of " just and equitable grounds for credits claimed," they are clearly immaterial for the purpose of a judicial determination of the rights of the parties. At most they would only show that McClure had been compelled to conduct his business under very unfavorable circumstances; that the amounts disbursed by him had been large; that much of his business had necessarily been done by his clerks, upon the accuracy of whose statements and calculations he was compelled in a great measure to rely ; that with the exception of the present differences his accounts had always been found correct ; that he had sometimes given receipts in advance of the time he had actually got the money, and by reason of the limited facilities for transacting business in his office it was possible for a receipt to be

got without the money being actually paid over; that there had been great delay in advising him of the errors in his accounts; and things of a like character. These are facts proper for the consideration of Congress on an application by McClure for legislative action in his favor, but, under the most liberal construction of the rules which govern courts of justice in determining the rights of parties, they fall far short of what is necessary for affording him judicial relief.

*The motion is denied.*