# WILLIAM CRAMP AND SONS SHIP AND ENGINE BUILDING COMPANY *v.* UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

No. 63. Argued November 8, 1915.—Decided November 29, 1915.

A finding by the Court of Claims that there was no mutual mistake between the parties in executing a release but that the instrument expressed the intention of the United States as previously agreed upon, although the other party had mistaken its legal rights without the fault of the United States or its officers, and that such failure to apprehend the legal effect of the release did not make it the subject of reformation, *held* in this case to be binding upon this court.

The Court of Claims was established for the purpose of considering the right of claimants to recover against the United States; and its findings of fact upon matters within its authority should be conclusive unless Congress otherwise provides.

When Congress by special act refers a case to the Court of Claims with right of appeal to this court, such appeal, unless the act otherwise provides, is governed by rules applicable to cases arising under the general jurisdiction of the court.

In this case there being ample testimony to support the finding of the Court of Claims that there was no mutual mistake in the execution of a complete release, and there being no mistake in the form of the instrument, *held* that claimant was not entitled to recover damages caused by delay in the Government furnishing material as the release executed covered all such claims although the representative of the claimant may not have so understood it.

In cases within its general jurisdiction, the Court of Claims has jurisdiction to reform a contract for the purpose of determining whether the claim, if established, is a valid one against the United States. *United States* v. *Milliken Imprinting Co.,* 202 U. S. 168.

46 Ct. Cl. 521, affirmed.

THIS action was brought in the Court of Claims to recover damages on account of delay alleged to be the fault of the United States in preventing completion according to contract of the battleship Massachusetts. The Court of Claims dismissed the petition (46 Ct. Cls. 521).

Large sums were demanded for delays covering other
periods than are involved in this appeal, and the case
as now presented concerns the right to recover the sum
of $27,984.99, being the damages which the Court of
Claims found accrued to the claimant for the period of
delay after February 1, 1896, for the period of three
months and twenty-nine days. The Court of Claims
made certain findings of fact, from which it appears that,
after the making of the contract, claimant arranged a
systematic working program for the construction of the
vessel within the contract time, and would have com-
pleted the vessel within time had it not been for the
failure of the United States to furnish materials to properly
carry on the work which by the terms of the contract
they had agreed to furnish; that by reason of such failure
of the Government, the completion of the vessel was
delayed for two years, six months and nine days beyond
the contract period; that the armor to be furnished in
accordance with said clause was obtained by the United
States from other contractors, who, without any fault
on the part of the claimant, failed to complete the manu-
facture thereof in time to deliver the same to the claimants
as they had agreed. Omitting the findings covered by
the release and contract made on May 26, 1896, and on
February 1, 1896, and the amount of damages accruing
for such delay, as to the sum now in controversy the
court found that on November 23, 1896, after the com-
pletion and delivery of the vessel in accordance with
the sixth paragraph of the nineteenth clause of the con-
tract, the balance of the amount due thereunder, but
held in accordance therewith until the final acceptance
of the vessel, was paid to the claimant, and the same
was accepted and a release approved by the Secretary
of the Navy was entered into by it without any written
protest, in the terms following:

"Whereas by the eleventh clause of the contract,

dated November 18, 1890, by and between the William Cramp & Sons Ship and Engine Building Company, a corporation created under the laws of the State of Pennsylvania, and doing business at Philadelphia, in said State, represented by the president of said corporation, party of the first part, and the United States, represented by the Secretary of the Navy, party of the second part, for the construction of a coast line battleship of about 10,000 tons displacement, which for the purposes of said contract is designated and known as coast line battleship No. 2, it is agreed that a special reserve of sixty thousand dollars ($60,000) shall be held until the vessel has been finally tried, provided that such final trial shall take place within five months from and after the date of the preliminary acceptance of the vessel; and

"Whereas by the sixth paragraph of the nineteenth clause of said contract it is further provided that when all the conditions, covenants, and provisions of said contract shall have been performed and fulfilled by and on the part of the party of the first part, said party of the first part shall be entitled, within ten days after the filing and acceptance of its claims, to receive the said special reserve, or so much thereof as it may be entitled to, on the execution of a final release to the United States, in such form as shall be approved by the Secretary of the Navy, of all claims of any kind or description under or by virtue of said contract; and

"Whereas the final trial of said vessel was completed on the 24th day of October, 1896; and

"Whereas all the conditions, covenants, and provisions of said contract have been performed and fulfilled by and on the part of the party of the first part;

"Now, therefore, in consideration of the premises, the sum of $57,536.60, being the balance of the aforesaid special reserve to which the party of the first part is entitled, being to me, in hand, paid by the United States,

represented by the Secretary of the Navy, the receipt whereof is hereby acknowledged, the William Cramp & Sons Ship and Engine Building Company, represented by me, Charles H. Cramp, president of said corporation, does hereby, for itself, and its successors and assigns, and its legal representatives, remise, release, and forever discharge the United States of and from all and all manner of debts, dues, sum and sums of money, accounts, reckonings, claims, and demands whatsoever, in law or in equity, for or by reason of, or on account of, the construction of said vessel under the contract aforesaid.

"In witness whereof I have hereunto set my hand and affixed the seal of the William Cramp & Sons Ship and Engine Building Company this 23rd day of November, A. D. 1896.

> "The Wm. Cramp & Sons Ship and Engine
> Building Company.

(Seal.)            Chas. H. Cramp, President.

"Attest:

"Theodore W. Cramp,

"Assistant Secretary."

The court sets forth the Act of June 10, 1896,[1] referring certain claims to the Secretary of the Navy for investigation and report, and, in part, the report of the Secretary, made December 9, 1896, is as follows:

"I have considered carefully the nature of these claims

---

[1] The Secretary of the Navy is hereby authorized and directed to examine claims against the Government which may be presented to him by contractors for the building of the hulls or machinery of naval vessels under contracts completed since January first, eighteen hundred and ninety-one, where it is alleged that such contractors have been subjected to loss and damage through delays in the work under said contracts which were not the fault of said contractors, but were due to the action of the Government, and to report to the next session of Congress the result of said investigation, and whether said claims are, in his opinion, subjects for the jurisdiction of the Court of Claims or for the action of Congress upon the same. 29 Stat. ch. 399, p. 374.

and the circumstances out of which they arose and while not attempting to pass on the merits of the same or to determine the amount, if any, that should be allowed on account of the matters mentioned, the fact exists that there was delay in the completion of the contracts beyond the time prescribed therein, and that such delay was in some measure at least due to failure on part of the Government to obtain and furnish the contractors the armor for the vessels as required, and in my judgment the interests of justice demand that they should be referred to the Court of Claims, which can consider these matters with more deliberation and care than could be devoted to them by the committees of the two Houses of Congress. . . .

"It will be observed that the contractors claim relief from the binding force of these agreements on the ground that the same were entered into by them under duress."

After consideration, the court finds the items of cost and expense during the period of delay now under consideration, three months and twenty-nine days, after February 1, 1896, to amount to the sum of $27,984.99, as already stated, and further finds:

"The claimant company submits for the consideration of the court the evidence of the then Secretary of the Navy and the president of the claimant company, who signed the contract on behalf of their respective principals, along with certain other testimony, taken since the decision in the case of the Indiana, to prove that at the time of the signing of the contract as aforesaid it was not within the minds of the parties so signing said contract that the language of paragraph six of the nineteenth clause of said contract, to wit: 'On the execution of a final release to the United States, in such form as shall be approved by the Secretary of the Navy, of all claims of any kind or description under or by virtue of this contract,' should embrace claims for unliquidated

damages of the character herein sued for, and that in so far as the language of said final release includes such unliquidated claims it was inserted by mistake, inadvertence, or accident, and did not express the true intent of the parties, and that the same should be so reformed as to exclude such claims.

"The court, after due consideration of the evidence aforesaid as well as the evidence adduced on behalf of the defendants, finds that there was no mutual mistake between the parties in the execution of the contract or the releases thereunder; that the language of said contract and releases expressed the intention and purpose of the United States as previously agreed upon, though the contracting party on behalf of the claimant company may have mistaken its legal rights thereunder.

"Upon the foregoing findings of fact the court finds the ultimate facts, so far as they are questions of fact, (1) that at the time of the execution of the releases set forth in finding V the claimant company was not, by reason of the acts or delays of the Government, under duress; and (2) that there was no mutual mistake between the parties in the execution of the contract or the final release thereunder, as the same expressed the true intent and purpose of the United States, and the failure of the officers of the claimant company to apprehend the legal effect thereof was not the fault of the United States or their officers, and that therefore the same are not the subject of reformation."

As a conclusion of law, the court decided on the authority of *United States* v. *Cramp*, 206 U. S. 118, that the claimant was not entitled to recover, and dismissed the petition.

*Mr. Joseph Gilfillan* for appellant.

*Mr. Assistant Attorney General Thompson* for the United States.

After making the foregoing statement, MR. JUSTICE DAY delivered the opinion of the court.

The contract in this case and the release above set forth are in the form shown in *United States* v. *Cramp,* 206 U. S. 118, and except for the considerations to be later dealt with, the present case is ruled by that unless relief in equity can be had, for it was there held that a release executed in the matter of the contract for the •battleship Indiana included all claims which grew out of the performance of the contract, although not arising from the actual construction of the vessel. In the subsequent case of *Cramp and Sons* v. *United States,* 216 U. S. 494, the case in 206 U. S. was distinguished because of the different form of release executed in that case, which contained a proviso that it should not include claims arising under the contract other than those which the Secretary of the Navy had jurisdiction to entertain.

As the recital of facts definitely shows, the Court of Claims found, after consideration of the evidence adduced upon behalf of the claimant and the defendant, that there was no mutual mistake between the parties in the execution of the contract and release, and that the contract and release expressed the intention and purpose of the United States, as previously agreed upon, though the contracting party on behalf of the claimant company had mistaken its legal rights. As ultimate facts, the court found, so far as the same were questions of fact, that there was no mutual mistake between the parties in the execution of the contract or the final release; that the same expressed the true intent and purpose of the United States, and that the failure of the officers of the claimant company to apprehend the legal effect thereof was not the fault of the United States or its officers, and was not the subject of reformation. If we are governed by the findings of fact in this, as in other cases

coming from the Court of Claims, these findings conclude the question of fact as to whether the testimony warranted a reformation of the contract upon equitable principles.

The record contains a stipulation, signed by the Assistant Attorney General and counsel for the claimant, in which it is recited that whereas one of the questions raised and decided by the judgment of the Court of Claims is the right of the claimant to equitable relief through the reformation of the contract in suit, and the reformation of certain releases, and that evidence was introduced in behalf of both parties touching the facts upon which the claimant founded its claim for equitable relief, subject to the defendant's objection, and because the record was very voluminous and contained the report of many proceedings not relevant to the right to equitable relief, certain evidence bearing upon that point was stipulated into the record. The stipulation concluded: "Providing, however, that on appeal recourse shall be had to the record of the proceedings and evidence next hereinbefore mentioned, for no purpose whatsoever, except for the consideration and determination of the question with respect to the claimant's right to the equitable relief aforesaid; it being understood and agreed that the Findings of Fact filed by the court May 29, 1911, shall not be affected in any other manner or for any other purpose by the said proceedings and evidence."

In view of this state of the record, we are met with the question, whether, in cases coming from the Court of Claims, of the character of the one now under consideration, the findings of fact are conclusive, as in other cases; or whether it is the duty of this court to determine for itself from the evidence sent up whether the claimant is entitled to equitable relief necessary to the establishment of his claim. The cases relied upon which it is contended make it the duty of this court to independently

consider the evidence are *Harvey* v. *United States*, 105 U. S. 671, and *United States* v. *Old Settlers*, 148 U. S. 427, which we shall notice later on.

In this case the Secretary of the Navy, as it appears from the recital of the facts, recommended that action be brought in the Court of Claims, and it was accordingly instituted in that court. The Court of Claims was given jurisdiction under the act of March 3, 1887 (c. 359, § 1, 24 Stat. 505), of all claims "founded . . . upon any contract, expressed or implied, with the Government of the United States, or for damages liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty if the United States were suable." By the rules of this court, the record from the Court of Claims is required to contain a transcript of the pleadings in the case, of the final judgment or decree of the court, and of such interlocutory orders, rulings, judgments, and decrees as may be necessary to a proper review of the case, and a finding by the Court of Claims of the facts in the case established by the evidence in the nature of a special verdict, but not the evidence establishing them. These facts are to be the ultimate facts established by the evidence, and not the evidence upon which the ultimate facts are based. *Burr* v. *Des Moines R. R.*, 1 Wall. 99, 102.

In the case of *District of Columbia* v. *Barnes*, 197 U. S. 146, it was held, under an act of Congress permitting parties to submit the justice of their claims against the United States for work done in the District of Columbia to the adjudication of a competent court, that equitable jurisdiction was thereby conferred upon the Court of Claims, sufficiently, at least, to order the reformation of a written contract between the claimant and the District, and to award a money judgment on the contract so reformed. In that case it was said that the findings of fact

would not be reviewed in this court, but were regarded as conclusive here, and that this court would determine the questions of law properly brought to its attention upon such findings.

In *United States* v. *Milliken Imprinting Co.*, 202 U. S. 168, which was a suit in the Court of Claims praying for the reformation of a contract and for damages for breach of the same as reformed, this court held that the Court of Claims, under the act of March 3, 1887, had jurisdiction to reform the contract as a basis of a judgment for money damages. In *United States* v. *Sisseton and Wahpeton Bands*, 208 U. S. 561, where a suit was brought under a special act of Congress, giving the Court of Claims jurisdiction to hear testimony and render final judgment, this court held that it would not go behind findings of fact made by the Court of Claims, citing *McClure* v. *United States*, 116 U. S. 145, and *District of Columbia* v. *Barnes, supra.* In the first of these cases, *McClure* v. *United States*, a motion was made in this court to order the Court of Claims to transmit to this court all the evidence upon which the case was heard and determined, and in default of sending up such evidence to make certain findings. The suit was brought under a special act of Congress, referring the claims of one Daniel McClure to the Court of Claims, with jurisdiction to hear and determine the same and, if the court should be satisfied that moneys charged against said McClure as Assistant Paymaster General were not in fact received by him, or that other just and equitable grounds existed for credits claimed by him, to make a decree, setting forth the amount to which McClure was entitled, and that an appeal should be allowed to either party as in other cases. This court, after setting forth the statutory authority of this court to make rules and regulations and the rules of this court requiring findings of fact, declined to make the order, and held that when Congress passes a special statute

allowing a suit to be brought in the Court of Claims, with the right of appeal to this court, the appeal will be governed by the rules applicable to cases arising under the general jurisdiction of the court, unless provision is made to the contrary in the special act. The court reviewed the case of *Harvey* v. *United States,* 105 U. S., *supra,* and stated that it was under a special statute authorizing the Court of Claims to proceed in the adjustment of questions between the claimants and the United States as a court of equity jurisdiction, and, according to the principles of equity jurisprudence, reform such contract and render such judgment as justice and right between the claimants and the Government might require. This court said that the appeal given to this court in the *Harvey Case,* under that particular statute, was an appeal in equity which would bring up for review the facts as well as the law, according to equity practice. In the *Old Settlers Case,* 140 U. S. 427, *supra,* the action was brought under a special act of Congress. In that case it was held that it was the intention of Congress by such special act to confer upon the Court of Claims the unrestricted latitude of a court of equity, stating an account, distributing a fund, and framing a decree, and that to that statute the doctrine of the *Harvey Case* applied, and this court proceeded to examine the evidence, after stating that it also had the advantage of the findings of the Court of Claims.

The present case was brought under the jurisdiction conferred upon the Court of Claims as in other cases. It is true that the same was brought upon suggestion of the Secretary under the act of 1896 requiring the Secretary to report whether, in his judgment Congress should act or the case should be referred to the Court of Claims. In cases within the general jurisdiction of the Court of Claims, it has jurisdiction to reform a contract for the purpose of determining whether the claim if established

is a valid one against the United States. *United States* v. *Milliken Imprinting Co.*, 202 U: S., *supra*. There is no good reason which authorizes this court in such cases to undertake a consideration of voluminous records and conflicting testimony to determine a matter which is committed to the jurisdiction of the Court of Claims in exercising the authority conferred by Congress upon that court, and which is specifically within the rules of this court, made under authority of Congress, requiring the Court of Claims to certify findings of fact and conclusions of law. The Court of Claims was established for the purpose of considering the right of claimants to recover against the United States, and when it finds facts upon matters within its authority that should be conclusive under the rules unless Congress otherwise provides. It follows that upon the facts found the claimant was not entitled to recover.

Nor do we find any room for the application in this case of the doctrine laid down in *United States* v. *Clark*, 96 U. S. 37, in which it is held that where the court certifies the evidence, and it appears that there is none to warrant its legal conclusion, a question of law is presented which may be determined here. In this case we are of opinion that there was ample testimony to warrant the conclusion of the Court of Claims, as stated in its findings. It certainly cannot be said that there was no supporting testimony, so as to make the question one of law and not of fact. It does not appear that either of the parties understood that the contract or release should be reduced to writing in any other form than as it was actually written. There was no mistake in the form of the instrument. *United States* v. *Milliken Imprinting Co.*, 202 U. S., *supra*, page 177. The testimony of the former Secretary of the Navy and of the Secretary in office at the time the release was signed to the effect that it was not believed that it would cover claims for

damages for delay, if competent for any purpose whatsoever, certainly did not show that mutual mistake of the parties which upon well-established principles of equity jurisprudence requires the reformation of the contract, and certainly no such special circumstances were developed of fraud, duress, or oppression, as would necessarily require relief against a mistake of law.

We find no error in the judgment of the Court of Claims, and the same is

*Affirmed.*

MR. JUSTICE McKENNA dissents from the opinion and judgment in this case. In his opinion, the Court of Claims, in view of the statute of June 10, 1896, authorizing and directing the Secretary of the Navy to examine the claims here involved, and to report to Congress the result of his investigation, and whether such claim was in his opinion subject to the jurisdiction of the Court of Claims or for the action of Congress, implied the intent of Congress that claims of this character should be considered upon broad equitable grounds. Thus considered, Mr. Justice McKenna thinks the claimant entitled to recover for the delay resulting from the fault of the Government notwithstanding the form in which the final receipt was drawn and executed.

MR. JUSTICE McREYNOLDS took no part in the consideration or decision of this case.