Green, Judge,
delivered the opinion of the court:
This suit was instituted under a special jurisdictional act,, which reads as follows:
That jurisdiction be, and is hereby, conferred upon the-Court of Claims, notwithstanding the lapse of time or statutes of limitations, to hear, examine, and adjudicate and render judgment in any and all legal and equitable claims arising under or growing out of any treaty or agreement between the United States and the Creek Indian Nation or Tribe, or arising under or growing out of any act of Congress in relation to Indian affairs, which said Creek Nation or Tribe may have against the United States, * * * (43 Stat. 139)
The petition alleges in substance—
That at the time of the passage of what is known as the Curtis Act, approved June 28,1898 (30 Stat. 495), the Creek Nation was the owner in fee of a large tract of land situated in what is now the State of Oklahoma; that said lands were held as a communal estate by the plaintiff for the benefit of its individual members; that the defendant acting in its capacity as guardian and trustee for the plaintiff, and desiring *348 to abolish its tribal government, and to divide among the citizens of the Creek Nation its communal property, passed what is known as the Curtis Act, under the terms of which defendant assumed full administrative control over the property and affairs of plaintiff and thereafter entered into two agreements with the plaintiff whereby the United States agreed to act as trustee in dividing the property equally between those lawfully entitled to participate in its distribution.
That in order to carry out the terms of the trust so assumed the defendant required the tribal authorities of the plaintiff to turn over to defendant’s officers and agents all their records and the rolls of citizenship. The defendant also directed its officers and agents to add to such tribal rolls such x>ersons as were found to be citizens of the Creek Nation. - That the officers and agents of the def endant, contrary to the terms of said agreements and in violation of the contract with plaintiff, added to the rolls of citizenship of the plaintiff the names of 2,000 persons who were not entitled to share in the property of the Creek Nation, made duplicate and triplicate enrollments of one and the same person, and other errors.
That while the officers and agents of the defendant were adding to the rolls of citizenship the names of a large number of persons who were not entitled to citizenship the plaintiff endeavored to ascertain, for the purpose of. correcting said errors, what names were being added to the rolls, but the principal Chief and officers of the plaintiff, and the attorney thereof, were refused by defendant’s agents the right to inspect the rolls then being prepared, and when the officers of the plaintiff applied to the Secretary of the Interior and the Commissioner of Indian Affairs for information in relation thereto the defendant’s officers refused to allow plaintiff to inspect the rolls; the rolls were thus kept secret and were kept from the knowledge of the authorities of the Creek Nation until the same, under the laws and rules established by the defendant, became final and irrevocable on March 4,1907, as provided in the act of April 26,1906, 34 Stat. 137.
That each of these members thus added to the citizenship rolls of the Creek Nation received 160 acres of the Creek national domain," or a total of 820,000 acres, and a large .amount of the funds of the Creek Nation, the exact amount *349 so received being unknown to the plaintiff, but is within the knowledge of the officers and agents of the defendant.
That at all times mentioned herein plaintiff was in a state of tutelage and was entitled to rely upon defendant, as guardian, for needed protection of its interests; that defendant had knowledge, or means of knowing, the extent of erroneous enrollments, and, although having ample means to correct the same, did not do so, but, instead, permitted the erroneous enrollment to stand.
That by reason of the acts as aforesaid by the agents and officers of the defendant the lands, money, and property of the Creek Nation were taken and confiscated by the United States without just compensation or due process of law.
The plaintiff therefore asks to recover from the defendant full compensation for the lands taken from it, as set forth above, with interest thereon from the date of judgment, and that the defendant be required to account to plaintiff for all money belonging to the Creek Nation paid to persons erroneously enrolled as members of the Creek Nation, and that plaintiff may have such other and further relief as to the court may seem just and proper.
The defendant demurs to the amended petition of plaintiff on the ground that the facts set forth therein do not furnish grounds for relief.
It will be observed from a reading of the -petition that the plaintiff seeks to recover compensation on account of lands and property which it alleges were wrongfully' taken through proceedings instituted under the Curtis Act whereby the tribal rolls of the plaintiff were so made up as to include the names of 2,000 persons who were not entitled to share in the property of the nation.
The Curtis Act above referred to provided for the creation of a commission, commonly known as the Dawes Commission, to determine who were citizens of the plaintiff tribe and to make up rolls thereof. The court will take judicial notice that the commission was formed and that proceedings were had in accordance with the act; that it held hearings, received evidence, and made up findings and conclusions as to the citizenship of the several tribes who claimed to be members of the nation. The rolls so made *350 up were duly approved by The Supreme Court has held in United States v. Wildcat, 244 U. S. 111, that the Dawes Commission was a quasi-judicial body and its judgments are subject only to such attack as might be made on the judgments of other judicial' tribunals. The action is not instituted for the primary-purpose of setting aside or modifying the judgment of this, tribunal and consequently is not a direct attack upon it. The defendant contends that it is not subject to collateral attack and this, we think, presents the main issue in the-case. The plaintiff, however, makes what seems to us a singular contention. It is said in the argument of counsel that—
The question of the validity or invalidity of the tribal rolls is not involved in the present case. We are not seeking to set aside the findings of the Commission, later approved by the Secretary of the Interior. Whichever way this case goes on final submission, the findings of the Dawes Commission will stand.
In other words, the plaintiff seeks to ignore the judgment, of the Dawes Commission. This, we think, cannot be done. As long as its findings stand they constitute a complete defense to this action. If the plaintiff’s argument and conclusions are valid, we would then have two absolutely contrary-judgments, one made by the Dawes Commission fixing the title of certain Indians to land and property, the other by this court holding that the same land and property belonged to some other person or persons. Such an illogical situation cannot stand. Unless the decision of the Dawes Commissiop is set aside as to the disputed property, the plaintiff cannot prevail.
Considering next the question as to whether the judgment, may be attacked collaterally and thereby held void, the defendant argues that this court has no equitable jurisdiction and that none was conferred upon it by the jurisdictional act. It also insists that the language of the act which gives this court the right to adjudicate any legal and equitable claims of the plaintiff is not sufficient to give the court power of a court of equity; that to do so it would be necessary for the act to specify that equitable jurisdiction was conferred upon *351 it. In support of this argument counsel for the defendant cite McClure v. United States, 116 U. S. 145, 150, and other decisions which bear upon this question directly or indirectly.
We do not think it is necessary to determine whether this court has had its jurisdiction enlarged by the Act under which this suit is brought. The petition does not allege want of jurisdiction, fraud, or any other ground of equitable interference which would justify the court in setting aside the decrees of the Dawes Commission. It merely alleges errors and irregularities, which, as has often been held, are not sufficient to set aside a judgment when attacked collaterally. See 34 C. J. Sec. 856, page 555, and cases cited. They are clearly insufficient to form a basis for holding the decrees of the Dawes Commission to be void.
There are some other features of the case that possibly ought to be noticed. The petition alleges that the United States agreed to act as trustee in dividing property of the Creek Nation among those lawfully entitled to participate in the distribution; that the defendant violated its contract under which it made up the rolls of citizenship, and that the defendant refused to permit the officers of plaintiff to inspect the rolls when they were being prepared.
While the demurrer admits all the allegations of the petition that are well pleaded, it does not admit allegations which are legal conclusions. The plaintiff does not set out the agreements which it claims were violated, nor does it state what the acts were that constituted violations. These allegations are therefore merely legal conclusions. These agreements are found in the statutes (31 Stat. 861; 32 Stat. 500); consequently the court will take judicial notice of what they contain, and an examination will show that the defendant merely agreed to make up rolls of the citizens of the plaintiff nation. An allegation to the contrary of a matter of which the court takes judicial notice must be disregarded. Chavez v. Times Mirror Co., 185 Cal. 20. The defendant did not agree that these rolls should be absolutely correct. In the nature of things, as shown by the report of the Commissioner to the Five Civilized Tribes, this would be impossible. Nor is there anything in these agreements which says that it was contemplated, or was intended or expected, that the Creek Nation *352 should intervene in the proceedings. Instead of finding that the agreements were violated, we find they were literally complied with. Lastly, it was agreed that—
The rolls so made by said commission, when approved by the Secretary of the Interior, shall be the final rolls of citizenship of said tribe, upon which the allotment of all lands and the distribution of all moneys and other property of the tribe shall be made, and to no other persons.
The rolls were so approved and under the agreements became final. It is argued that the plaintiff did not have a day in court, and that its land and property were taken without due process of law. If plaintiff was entitled to a day in court when the commission was holding its hearings, in other words entitled to intervene, the denial of permission to be heard would be fatal to the jurisdiction of the commission, but the jurisdiction of the commission did not depend upon the plaintiff being given a hearing. Jurisdiction was granted by the agreements which gave the right to the commission to hear and determine who would be entitled to be enrolled as members of the tribe. As long as the commission proceeded in accordance with the agreements entered into between the parties, without fraud or intentional misconduct, it was acting under the jurisdiction conferred by the agreements, and its decrees were final.
Our conclusion is that the demurrer must be sustained and the petition dismissed. It is so ordered.
Whitaker, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.