Green, Judge,
delivered the opinion of the court:
The plaintiff is a city and municipal corporation of the State of New York, located upon the ocean, and the evidence shows without conflict that the defendant made to this city an offer to aid in financing the construction of a beach and ocean front improvement through a loan and grant. This offer was made in writing and is set out in finding 2 of the preceding Findings of Fact. In this offer it was proposed that the defendant would make a grant to the plaintiff in the amount of. 45 percent of the cost of the project upon completion, as determined by the Federal Emergency Administrator of Public Works, and by purchasing at the principal amount, plus accrued interest thereon, from the applicant, obligations of the description set forth in the offer in the aggregate principal amount of $1,352,000, including in the amount of such obligations bonds estimated at $400,000, which, to effect payment of any part of the 45 percent grant, might be purchased and held for ultimate cancellation, less the amount of such obligations, if any, as the plaintiff, with the consent of the said administrator, sold to purchasers other than the defendant.
The offer was conditioned on the issuance by plaintiff of obligations in the aggregate principal amount of at least 78 percent of the estimated total cost of the project, exclusive of the cost of the land, and the execution by the plaintiff of a trust agreement which should provide for the rights and priorities of the several owners of such obligations.
This offer was accepted by the plaintiff on October 19, 1935.
*75 Bonds of the plaintiff of the type described in the offer, in the principal amount of $1,352,000, drawing interest at the rate of 4 percent per annum, were delivered to the defendant March 20, 1936, the first interest thereon payable May 1', 1936, with such interest coupons as were unpaid attached to the bonds; and for this delivery the plaintiff received from the defendant $1,372,880.89, being the principal amount of the bonds, plus interest of $20,880.89.
On June 16, 1937, the project was completed and in accordance with the proposal the Federal Emergency Administration of Public Works caused an audit to be made in order to determine thei amount of the grant. In allowable costs the auditor included interest during construction at the rate of 4 percent per annum upon the principal amount of $1,352,000. The total allowable net cost ascertained by the auditor was $1,647,805.19, forty-five percent of which is $741,512.34. When the audit was completed there had been paid by defendant to the plaintiff $315,550.00, leaving a balance due on the grant of $425,962.34. The Federal Emergency Administration of Public Works approved the audit and no objection was made to the audit by the plaintiff.
The trust agreement referred to in the offer was executed on April 1, 1938, by the plaintiff, the defendant, and the National City Bank of Long Beach as depositary. Under it the defendant delivered to the depositary, in escrow, the bonds (stamped nonnegotiable) of the plaintiff, in the aggregate principal amount of $400,000, with all unmatured coupons thereto attached, which were received by the depositary in behalf of the holders of the remaining bonds of the plaintiff issued and held by the defendant, for the purpose of creating a contingency fund in the “bond fund”, which was a special trust fund to assure the prompt payment of the interest and principal of the other bonds remaining outstanding. The interest on the escrow bonds becoming due, when paid was to be deposited in the bond fund and applied on any sum that was due on the other outstanding bonds which had been issued by the plaintiff. When these bonds and interest thereon had been paid the depositary was to *76 cancel and deliver to plaintiff all tbe escrow bonds and coupons attached.
Of the sum of $425,962.34 still due the plaintiff as a part of its grant at the time of the execution of the trust agreement, $400,000 was paid by delivery of that amount of the bonds to the depositary, and the balance was paid to plaintiff in cash.
The interest on the $400,000 “grant” bonds for the period from November 1, 1935, the date of the bonds, to April 1, 1938, the date of the trust agreement, amounted to $38,666.67. Interest on the $400,000 for the period of construction was $19,866.80, which interest was allowed and approved by the auditor as a part of the base for the grant. The grant being 45 percent, the Government paid plaintiff, by way of grant, $8,940.06 of this interest. The interest on this block of bonds that had accrued prior to March 20,1936 (date of delivery of all bonds to the Government), was $6,177.76. This sum was also paid by the Government to plaintiff. The two interest items of $8,940.06 and $6,177.76, aggregate $15,117.82, which deducted from interest on the grant bonds of $38,666.67, for the period from November 1, 1935, to April 1, 1938, leaves a remainder of $23,548.85, which the plaintiff claims, alleging that it had been collected by the defendant over and above the amount of interest paid or allowed by the defendant to the plaintiff as above stated.
The plaintiff makes in its petition a very extended prayer for relief asking (1) That it be decreed that the delay in the execution of the trust agreement be excused and that the trust agreement be reformed and deemed executed nmio fro twno as of a day within a reasonable period after June 16, 1937, the date of the completion of the public works project; (2) That the defendant be not permitted to retain the said sum of $23,548.85; (3) That the defendant be compelled to return the sum of $23,548.85 to the plaintiff to be deposited by the latter in the “Beach Improvement Bond Account”; (4) That it be decreed that the- sum of $23,548.85 is not lawfully or properly in the possession of the Treasurer of the United States; (5) That the court exercise its equitable powers to mete out justice to the plaintiff; and (6) That the *77 plaintiff have such other further relief as this court may deem proper and just in the premises.
This widespread prayer for relief makes it difficult to determine what plaintiff regards as the main features of its case, and the issue raised is further complicated by the fact that the written contracts upon which the case depends are not clearly framed. There are, however, certain salient facts appearing in the case which we think are controlling. It appears that the defendant made an offer, in writing, to the plaintiff, of a loan and grant to be used in financing a public improvement, and part of the proposal was that defendant would purchase coupon bonds from the plaintiff, drawing interest at the rate of 4 percent, in the principal amount of $1,352,000, including bonds to the amount of $400,000, which were to be held by a depositary agreed upon under the terms of a trust agreement thereafter to be executed, as security for the payment of the bonds issued for the loan made to plaintiff. The controversy in the case arises over the interest which came due on the $400,000 in bonds which were delivered to defendant and eventually placed in escrow with the depositary in accordance with the trust agreement.
As previously stated the interest on. the bonds which were deposited in escrow, from the date thereof to the date of the trust agreement, amounted to $38,666.67. The plaintiff paid the amount of the matured coupons to the defendant, less two deductions, one of which was $6,177.76 interest which had accrued on the $400,000 in bonds when they were delivered to the defendant, and the other deduction was $8,940.06, which is 45 percent of the interest on the $400,000 during the period of construction, which interest was treated by the auditor as part of the construction cost. The remainder of the interest, $23,548.85, the plaintiff says was wrongfully collected by the defendant, and the issue between the parties arises on this claim.
The plaintiff concedes that this interest was paid in accordance with the terms of the bonds which it issued and delivered to the defendant, and that in order to obtain any relief its contract with the defendant must be reformed. Plaintiff does not specify definitely what this reformation should be, but it is obvious that the bonds cannot be re *78 formed and therefore the reformation, if made, must be in the trust agreement and be in the nature of a provision to the effect that the defendant shall not be entitled to the interest which accrued between the date when the project was completed and the date when the bonds were placed in escrow in accordance with the trust agreement, but' that such interest should be deposited in the so-called “bond fund” and disposed of in accordance with the trust agreement. Under this issue the first question to be determined is whether plaintiff is entitled to have the trust agreement reformed.
The only testimony in support of plaintiff’s claim that the parties intended that the defendant should not get the interest in controversy was given by John B. McCabe, a city auditor, who is not shown to have had any part in the negotiations leading to the transaction. This witness testified as to his construction of the agreement between the parties, but this evidence is obviously incompetent. A letter dated April 28, 1936, written by Mr. Aulsbrook, Special Eeview Counsel for the Federal Emergency Administration of Public Works, to the city clerk was introduced but this letter merely recites that the interest should be set aside for- the credit of the beach improvement bonds “pursuant to the terms of the escrow agreement” by which the administration would deposit the grant bonds with a bank in New York. In other words, the agreement of the Government was to be what was expressed in the escrow agreement. A letter from the Federal Emergency Administration of Public Works, which referred to the trust agreement, and was dated October 12, 1935, was also introduced. This letter shows that it was not the intention that the bondholders should have any direct right under the trust agreement, and this is just what the trust agreement provided. Plaintiff’s claim in effect is that the trust instrument should have had a further provision as to the interest which had been paid prior to the execution of the trust agreement. The evidence fails to show that at the time it was received and executed, there was anything said with reference to the interest which had been paid on the escrow bonds but not allowed to plaintiff, although it was quite obvious that there was no provi *79 sion whatever in the trust instrument with reference to such interest. The report of the auditor allowing two items, and only two, out of the total amount of interest paid on the escrow bonds up to the time of the execution of the trust agreement was full notice to plaintiff that the remainder of the interest was not allowed.
A peculiar feature of the case not found in any other called to our attention is that what - the plaintiff desires is not to have a change or alteration made, in any of the provisions of the contract and to thus have it reformed but to insert in the contract or have made independent of it a new provision as to which nothing was written in the contract. In effect, what plaintiff asks the court to do is to create a new and additional- contract between the parties with reference to a matter which, had been omitted in the. trust agreement. - -
It is elementary that in order -to -entitle plaintiff to a-reformation of the trust agreement it. must appear from the evidence that the form in which the .contract was executed was the result of mutual mistake made at the time by the parties bound by it. It is possible that the officials of the plaintiff thought or considered that the defendant would not be entitled to hold the interest in controversy under the contract as it was drawn, -but this, would not entitle plaintiff to a reformation as this would not be a mutual mistake.
In Cramp & Sons v. United, States, 239 U. S. 221, 232, it was held that where there was no mutual mistake in executing a release, the fact tha.t one . party had mistaken its legal rights did not make the release the subject of reformation. The court said also
It does not appear that either' of the parties understood that the contract or release should be reduced to writing in any other form than as it was actually written. There was no mistake in the form of the .instrument. ,
It was held there was no ground for reformation. It was further held in the same case: that the testimony of the officers- of the Government as to what they believed to be the effect of the release-would--not-,show a mutual mistake in executing it. - .
*80 The case now before the court is very similar to the Cramp case, supra, ■ in this respect as there is not the slightest evidence that either of the parties understood that the contract should be reduced to writing in any other form than that in which it was written or was mistaken as to what was in the trust agreement. It may be that both parties expected that the trust agreement would be executed immediately upon the completion of the project, or so soon after as to make the time which elapsed immaterial. If the trust agreement had been executed upon the completion of the project or very shortly thereafter, the interest in controversy would not have accrued to any appreciable extent until after the bonds had been turned over to the depositary, and the interest which then came due and was collected would pass into the bond fund, leaving no substantial sum to be the subject of controversy. The plaintiff complains of the delay in executing the trust agreement which was the cause of interest accumulating on the bonds, but there is no evidence that the delay was intentional on the part of the defendant, and the fact that it existed simply presents a case where the plaintiff should have required a provision in the trust instrument which would have protected it in this respect. The failure of its officers to require this has resulted to the disadvantage of the plaintiff and possible future injury, but it affords no ground for reformation of the contract.
Whatever may have been the understanding of the plaintiff with reference to the interest in controversy, in order to authorize a reformation of the trust agreement the evidence must show a mutual mistake existed as to its contents at the time when it was executed, Matthews v. Whitehorn, 78 N. E. Rep. 89, 91, but there could have been no mistake as to the contents of this instrument. A casual reading of it would apprise any one that nothing whatever was said therein with reference to interest that had been paid before its execution and retained. If the plaintiff’s officers failed to read the document their negligence in this respect will not relieve the plaintiff. If they did read it and thought that the general terms of the instrument would protect the plaintiff this was a mistake of law for which no relief can be granted.
*81 Plaintiff asks that the court decree that the trust agreement be deemed executed mme. pro tunc as of a day within a reasonable period after the date of the completion of the public works project, but this would not be a reformation of the contract but an alteration of its terms and a misconstruction of a fact in relation to it. We think that neither the law nor the facts authorize such action on the part of this court. Considered as a whole the relief asked by plaintiff can only be granted upon reformation of the contract which it executed, for which we find no sufficient basis in the evidence. It follows that plaintiff’s petition must be dismissed and it is so ordered.
Madden, Judge; Jones, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.