SUTCLIFFE STORAGE & WAREHOUSE CO., Inc. v. UNITED STATES.

No. 48624.

United States Court of Claims.

June 2, 1953.

Leo J. McCullough, Washington, D. C., for plaintiff. E. Russell Greenhood, Boston, Mass., was on the brief.

Thos. L. McKevitt, Washington, D. C., with whom was James M. McInerney, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

■ This is an action to recover $60,448.57, plus interest, as compensation for the use and occupancy of certain land by defendant during the period from April 13, 1942, to December 31, 1945. Plaintiff, a Massachusetts corporation, had at some time prior to April 13, 1942, leased from the New York Central Railroad Co., hereinafter referred to as the railroad, two noncontiguous parcels of land in Allston, Massachusetts.[1] These parcels contained approximately 190,242 square feet of land, on which were located a number of buildings having a total area of 121,588 square feet, and platforms covering 11,340 square feet. The remainder of the area amounting to approximately 57,314 square feet consisted of open land.

Defendant, after some negotiations with plaintiff, through the Navy Department, began occupancy of the premises on April 13, 1942. On July 9, 1942, a lease dated April 13, 1942, which had been prepared by defendant and executed by both parties, was forwarded to plaintiff. In it the premises were described as "Buildings at # 99 and # 241 Lincoln Street, Allston, Massachusetts, containing approximately 121,588 square feet of space". Defendant used and occupied, during the period here involved, the buildings, platforms, and open areas, or the approximately 190,242 square feet above referred to.

Plaintiff contends in suit (1) that as the lease did not cover the open land and platforms used and occupied by defendant, but referred only to Buildings No. 99 and No. 241 containing approximately 121,588 square feet of space, there is an implied contract under which defendant is obligated to pay a reasonable rental for the additional space; or (2) that the use and occupancy of such space by defendant constituted a taking of private property for public use, for which plaintiff is entitled to just compensation under the Fifth Amendment. Defendant takes the position (1) that the lease is ambiguous, and parol evidence is admissible to clarify the ambiguity in the description of the property; (2) that the lease as thus clarified included all of the land used and occupied by defendant; and (3), in the alternative, that because of mutual mistake, the lease is subject to reformation to show the true intent of the parties.

The proof shows that in the early part of 1942, plaintiff had under lease from the New York Central Railroad Company two parcels of land in Allston, Mass., known as No. 99 and No. 241 Lincoln Street, respectively. The area known as No. 99 Lincoln Street consisted of a large building covering 47,267 square feet, a platform and ramp covering 6,340 square feet, and an open land area of approximately 45,000 square feet, which were used by plaintiff for automobile unloading and storage purposes.

Plaintiff's lease to the second area, No. 241 Lincoln Street, covered only buildings and a loading platform, together with the right to use the railroad sidetracks adjoining the platform, and the right of ingress and egress for men and automobiles from the buildings and platforms to Lincoln Street.[2] Plaintiff at no time had any open land area under lease at this location.

1. In the City of Boston. The premises are sometimes said to be located in Brighton, Mass. See finding 3.

2. The lease from the railroad to plaintiff covering the premises at No. 241 Lincoln Street in effect on April 13, 1942, ran until October 31, 1942. Its provisions are set out in finding 5. On July 1, 1942, plaintiff and the railroad executed a new lease which differed from the old one in the respects listed in finding 17. Insofar as here pertinent, the only change was to include in plaintiff's lease the so-called Coca-Cola Building, referred to hereafter.

On or about February 1, 1942, defendant became interested in obtaining from plaintiff a sublease of the above properties. On March 13, 1942, plaintiff submitted a bid to the Supply Department, Navy Yard, Boston, covering the rental of the premises for the three-month period from April 1, 1942, until June 30, 1942, the end of defendant's fiscal year. Plaintiff included in its bid a breakdown by area and rental price on all of the open land, platforms, and buildings which it then had under lease from the railroad, with the exception of the small First Aid Building. Also included in this breakdown was the Coca-Cola Building, which was not at that time leased to plaintiff.[3]

Defendant was limited, by the provisions of Section 322 of the Economy Act of June 30, 1932, 47 Stat. 382, 412, 40 U.S.C.A. § 278a, to the payment of rentals not to exceed 15 percent of the appraised fee value of the leased premises. An appraisal for the purpose of compliance with the statutory limitation fixed the fee value of the premises, including the land in question covered by plaintiff's bid, at $158,000. The price quoted in the bid amounted to $9,550 for three months, or $38,200 per annum. The maximum rental authorized by law for the premises appraised at $158,000 fee value was $5,925 for three months, or $23,700 per annum.

On March 30, 1942, the Supply Officer of the Boston Navy Yard advised plaintiff by letter that its bid exceeded the 15 percent statutory restriction, and in view of that fact, it was necessary that condemnation proceedings be instituted. On April 1, 1942, plaintiff's president wrote the following letter to the Supply Officer:

"On March 14th, 1942 we submitted a bid on Buildings at 99 Lincoln Street and 241 Lincoln Street, Allston, Massachusetts, for occupancy by the United States Navy to June 30, 1942 in the amount of $9,550.00.

"We herewith submit a revised bid of $5,925.00 for the period ending June 30th, 1942 with the Understanding that the United States Navy will take care of all repairs to the buildings, Track and Platforms.

"We can arrange immediate occupancy of the major part of the space."

On April 10, 1942, plaintiff confirmed by letter a telephone conversation of the same date giving defendant authority to "occupy the premises at 99 and 241 Lincoln Street, Allston, Massachusetts, Monday, April 13, 1942." In this letter plaintiff indicated its understanding that a lease would be submitted at a later date, to be adjusted as of date of occupancy on the basis of plaintiff's revised bid of April 1, 1942.

On April 13, 1942, defendant went into possession of the premises at No. 99 Lincoln Street, and a few weeks later it went into possession of the buildings and platform at No. 241 Lincoln Street, with the exception of the First Aid Building, which was used by plaintiff as an office.

A draft of a lease dated April 13, 1942, was prepared by the Office of the Judge Advocate General of the Navy, sent to plaintiff for its execution, signed by plaintiff and returned to defendant for its execution, and on July 9, 1942, the lease executed by both parties was forwarded to plaintiff. It covered a period from April 13, 1942, to June 30, 1943, with the right of renewal by defendant on thirty days' notice, and provided for a rental price of $23,700 per annum. The premises were described in the lease as "Buildings at #99 and #241 Lincoln Street * * * containing approximately 121,588 square feet of space."

The area mentioned in the lease, i. e., 121,588 square feet, included only the buildings on the two premises. It did not include any platforms or open land areas. As described in finding 10, defendant, beginning on April 13, 1942, used and occupied the buildings, platforms, and open land areas, or a total area of approximately 190,242 square feet of space.

Plaintiff made no protest that the defendant was occupying more space than it was entitled to under the lease until October 14, 1943, a year and a half after defendant first

---

3. The lease referred to in note 2, supra, from the railroad to plaintiff, included this building.

occupied the premises, when it wrote defendant as follows:

"Under the terms of our lease (N O D–2905) between the Sutcliffe Storage & Warehouse Co., Inc. and the United States of America, we lease approximately 121,588 square feet of space at #99 and #241 Lincoln St., Allston. We find that since the start of the U. S. Navy occupancy of this property that they are also occupying and using 68,204 square feet of land which is not covered in the above lease.

"We feel that this matter should be given your prompt attention in order that we may execute a lease covering your past use and future use of this property."

Prior to the date of this letter, the lease between plaintiff and defendant had been renewed for the period from July 1, 1943, to June 30, 1944, by notice dated May 15, 1943. The description of the premises and the annual rental provided in the lease were not changed. Plaintiff accepted this renewal without protest and with knowledge that defendant was then and had been occupying and using the entire 190,242 square feet of space. Shortly after June 1, 1944, plaintiff received a notice of renewal of lease from July 1, 1944, to June 30, 1945, in which the description of the leased premises had been changed to "Building and Land * * * containing approximately 190,242 square feet of space, said area being all of the land leased to the lessor by the New York Central Railroad * * *." Plaintiff's president testified that this form of renewal was not acceptable to it. However, defendant continued to pay and plaintiff continued to accept, without protest, the rental price of $23,700 per annum.

In May of 1945, plaintiff received a notice of renewal of lease dated May 28, 1945, stating:

"the United States of America elects to renew the said lease, as the same may have been amended, for the period of one year from and after June 30, 1945, and by these presents does renew, extend, and adopt the said lease and all the terms and conditions thereof for the period beginning July 1, 1945, and ending June 30, 1946."

Plaintiff's leases from the railroad were canceled by the railroad as of December 31, 1945, following which date defendant leased the premises which it had been occupying and using directly from the railroad.

As heretofore stated plaintiff seeks to recover the reasonable rental value of the land used and occupied by defendant which it claims was not included in the lease to defendant, either on the theory of implied contract or under the Fifth Amendment. The defense to these claims is that the lease is ambiguous; that parol evidence is admissible to clarify the ambiguity, and that the lease as thus clarified included all of the land used and occupied by defendant. Alternatively, defendant urges that the instrument would seem to be subject to reformation in the light of the evidence to show the true intent of the parties, on the ground of mutual mistake with reference to the original description in the lease of the leased premises.

We are of the opinion that the latter contention of the defendant is fully supported by the evidence of record. Without undue repetition of the facts heretofore stated, the proof is clear and convincing that plaintiff intended to lease to defendant, and that defendant intended to lease from plaintiff, all the property plaintiff had under lease from the railroad at No. 99 and No. 241 Lincoln Street,[4] at an annual rental of $23,700. The proof is also clear and convincing that the failure of the lease as written, expressly and in detail, to reflect the true intent of the parties was the result of a mutual mistake. The area used and occupied by defendant, for which plaintiff was paid $23,700 per annum, was exactly what both parties to the lease had contemplated would be used and occupied by defendant under its lease and for the stated price.

Under such circumstances, this court may, in the exercise of its equitable jurisdiction and for the purpose of award-

4. Except the First Aid Building, at No. 241 Lincoln Street.

594

ing or refusing to award a money judgment against the United States, reform the lease so as to express the understanding and intention of the parties to it. William Cramp and Sons Ship and Engine Building Company v. United States, 239 U.S. 221, 36 S.Ct. 70, 60 L.Ed. 238; Ackerlind v. United States, 240 U.S. 531, 36 S.Ct. 438, 60 L.Ed. 783; Iowa-Wisconsin Bridge Co. v. United States, 84 F.Supp. 852, 114 Ct.Cl. 464, 504; certiorari denied, 339 U.S. 982, 70 S.Ct. 1020, 94 L.Ed. 1386; Heid Brothers v. United States, 63 Ct.Cl. 392. "This court may exercise equity jurisdiction to the extent of reforming contracts and base its decree upon the contract as reformed." Pocono Pines Assembly Hotels Co. v. United States, 73 Ct.Cl. 447, 482.

Plaintiff argues that the sole remedy of defendant, on its contention that the lease as written did not state the true contract, is a Bill in Equity to reform the contract. We are of the opinion that there is no sound reason, where the ground for reformation is established by clear and convincing evidence, Ivinson v. Hutton, 98 U.S. 79, 25 L.Ed. 66; Adams v. Henderson, 168 U.S. 573, 18 S.Ct. 179, 42 L.Ed. 584; why reformation should not, in a suit in this court on the contract be available to the Government as a defense. Metropolitan Casualty Ins. Co. v. Friedley, D.C., 79 F.Supp. 978; 5 Williston on Contracts, Rev. Ed., Sec. 1599; see also Fitch v. Lomay, Tex.Com.App., 16 S.W.2d 530, 66 A.L.R. 763. The granting by this court of such relief in proper cases, to either party, promotes substantial justice according to the merits of the case.

Plaintiff finally contends that defendant, by filing a general traverse to the petition in the instant case, has waived its right to assert the defense. There is no merit to this position. If we assume, however, that the defense should have been specially pleaded, as plaintiff argues, failure to do so is immaterial where, as here, evidence of the defense was introduced and not objected to for failure to plead it, and no surprise is claimed. American Casualty Co. of Reading, Pa. v. Morris, D.C., 51 F. Supp. 889, affirmed, Simon v. American Casualty Co. of Reading, Pa., 4 Cir., 146 F.2d 208; Tillman v. National City Bank of New York, 2 Cir., 118 F.2d 631; cf. Metropolitan Casualty Ins. Co. v. Friedley, supra.

We hold, therefore, for the reasons expressed herein, that under the true terms of the lease agreement, as understood and intended by both parties, the defendant is not liable to plaintiff for additional rental for use of the premises in question or for the payment of just compensation for the taking of such premises.

The petition is therefore dismissed.

It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN and WHITAKER, Judges, concur.