**FILED**
May 20, 2024 04:38 PM
ST-2020-MC-00034
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
**\*\*\*\*\*\*\*\*\*\*\*\*\***

| | |
|---|---|
| KISHAWN SMITH, ) | |
| ) | **CASE NO. ST-2020-MC-00034** |
| Petitioner, ) | |
| ) | |
| -vs- ) | **PETITION FOR WRIT OF HABEAS** |
| ) | **CORPUS** |
| GOVERNMENT OF THE VIRGIN ISLANDS, ) | |
| OFFICE OF THE ATTORNEY GENERAL, ) | |
| U.S.V.I. BUREAU OF CORRECTIONS ) | |
| ET. AL, ) | |
| ) | |
| Respondents. ) | |

Cite as 2024 VI Super 21U

## <u>MEMORANDUM OPINION AND ORDER</u>

¶1      **THIS MATTER** is before the Court on *pro se* Petitioner Kishawn Smith's ("Smith") Motion for Extraordinary Writ of Habeas Corpus ("Motion"), filed September 17, 2020.  The Clerk of the Court docketed the Motion as a separate civil action. Therefore, the Motion will be treated as a Petition for Writ of Habeas Corpus ("Petition").

¶2      For the reasons set forth below, the Court will deny the Petition as Smith has not made a *prima facie* showing that relief should be granted.

## I.      INTRODUCTION

¶3      In support of his Petition that a writ of habeas corpus should issue, Smith states that he was tried and convicted "approximately 14 years ago."[1] Smith argues that his conviction "raises a constitutional violation."[2] Smith writes:

> [t]hus, for relevancy of the fact of argument within the realm of this habeas corpus motion, the issues of Miranda Rights being presented during the midst of trial. Also Petitioner argues that there was Prosecutorial Misconduct, Ineffective Assistance of Counsel, and Improper Juror Instructions in the jury trial.[3]

¶4      Smith states that he was arrested on August 7, 2006, and sentenced on April 30, 2007, on Count II of the charges, carrying an unlicensed firearm during the commission of a second degree murder, Count III of the charges, second degree murder, and Count IV, unauthorized possession of

---

[1] Pet'r's Mot. 2. Smith was sentenced in 2007, now seventeen (17) years ago.
[2] Pet'r's Mot. 3.
[3] Pet'r's Mot. 3.

ammunition.[4] Smith states on the night of his arrest, he waived his *Miranda* rights, answered two (2) questions ("Do you know the victim?" "Do you live in Estate Thomas?") and then invoked his 6th Amendment right asking for an attorney.[5] Smith states that while handcuffing Smith and leading him out of the interrogation room, a singular detective made an unsolicited comment asking if he drives a green Suzuki Esteem and if his nickname is "Captain" and that the "detective should have known that [Smith], who had previously requested counsel, would answer the questions, violating his *Miranda* rights."[6] Smith states that this additional questioning violated his 6th Amendment rights.[7] Smith asserts that at trial the detective was asked if he asked him any questions, and the detective testified to the two (2) questions he was asked before invoking his 6th Amendment right.[8] Smith writes that he took the stand in his defense and was asked "the same questions" and defense counsel objected, the Court held a sidebar, and the judge gave instructions to the jury and struck the testimony, but the prosecutor asked the questions again.[9]

¶5      Smith argues that his ineffective assistance of counsel claim is based on the grounds that "the attorney didn't object when the prosecutor asked the *Miranda* questions again after the judge just gave the jury instructions and told him and the prosecutor that he can't infer of [sic] ask those questions again."[10] Smith also states that both prosecutors made references to Smith saying he drove a green Suzuki Esteem "for impeachment purposes" after being told not to do so, the trial judge did not give a curative instruction, and his appellate counsel should have brought up this argument on appeal.[11] Smith avers that his claim for prosecutorial misconduct is "based on the repeated inference made by the prosecutor, well after the fact that Petitioner invoked his *Miranda* rights."[12] Finally, Smith asserts that the prosecutors tainted his trial by vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused.[13]

¶6      Procedurally, Smith has already appealed his conviction, asserting that the evidence presented at trial was insufficient to sustain his convictions.[14] The Virgin Islands Supreme Court found that "the evidence is sufficient to sustain Smith's convictions for second degree murder and possession of an unlicensed firearm. However, because the People failed to present sufficient evidence that Smith was not authorized to possess ammunition, his conviction on that charge" was reversed.[15]

---

[4] Pet.r's Mot. 3-4.
[5] Pet'r's Mot. 4.
[6] Pet'r's Mot. 4.
[7] Pet'r's Mot. 5.
[8] Pet'r's Mot. 5.
[9] Pet'r's Mot. 5. The Court notes that this account does not indicate a *Miranda* violation at trial on its face.
[10] Pet'r's Mot. 5-6.
[11] Pet'r's Mot. 6.
[12] Pet'r's Mot. 6.
[13] Pet'r's Mot. 6.
[14] *Smith v. People of the V.I.*, 51 V.I. 396 (V.I. 2009).
[15] *Id.* at 397.

## II. LEGAL STANDARD

### A.      Petition for writ of habeas corpus.

¶7      "Habeas corpus is an equitable remedy employed when a person's conviction involved a constitutional violation."[16] "Locally, section 3 of the Revised Organic Act establishes the use of writs of habeas corpus under Virgin Islands law."[17] Pursuant to Virgin Islands Habeas Corpus Rule 2(a), "[a]ny person who believes he or she is unlawfully imprisoned or detained in custody, or confined under unlawful conditions, may file a petition for a writ of habeas corpus to seek review of the legality of that imprisonment or detention." Rule 2(a)(4) further states that a petition for a writ of habeas corpus must "set forth separately each ground on which the imprisonment or detention is alleged to be illegal and shall state the specific facts supporting each ground."

¶8      V.I. CODE ANN. tit. 5, § 1302 states that:

> Application for the writ of habeas corpus shall be made by petition signed either by the party for whose relief it is intended or by some person in his behalf. The petition shall comply with the following requirements:
> (1) It shall specify that the person in whose behalf the writ is applied for is imprisoned or restrained of his liberty and the officer or person by whom, and the place where, he is so confined or restrained, naming all the parties, if they are known, or describing them, if they are not known.
> (2) If the imprisonment is alleged to be illegal, the petition shall state in what the alleged illegality consists.
> (3) The petition shall be verified by the oath of the party making the application.

¶9      When presented with a procedurally compliant habeas petition, this Court "must first determine whether the petition states a prima facie case for relief—that is, whether it states facts that, if true, entitle the petitioner to relief—and also whether the stated claims are for any reason procedurally barred."[18] A petitioner makes a prima facie case by stating "specific factual allegations which require habeas relief rather than mere conclusions of speculations."[19] "If the court determines that the petition does not state a *prima facie* case for relief or that the claims are all procedurally barred, the court will deny the petition outright."[20] However, if it appears that the writ ought to be issued, the Superior Court shall grant the petition for writ of habeas corpus without delay.[21] "The

---

[16] *Burke v. Prosper*, 2019 VI 6, ¶ 11 (citing *Kuhlmann v. Wilson*, 477 U.S. 436, 447 (1986)).

[17] *Id.* (citing *Rivera-Moreno v. Gov't of the Virgin Islands*, 61 V.I. 279, 292 (V.I. 2014)).

[18] *Burke v. Herbert*, Super. Ct. Civ. No. SX-15-CV-518, 2017 WL 5502954, at * 1 (V.I. Super. Ct. Nov. 14, 2017) (unpublished) (quoting *Rivera-Morena v. Gov't of the Virgin Islands*, 61 V.I. 279, 311 (V.I. 2014).

[19] *Woodrup v. Gov't of the Virgin Islands,* Super. Ct. Civ. No. ST-16-MC-47, 2018 V.I. LEXIS 64, at * 4 (V.I. Super. Ct. June 20, 2018) (quoting V.I. H.C.R. advisory committee's note) (unpublished).

[20] *Simon v. Mullgrav*, Super. Ct. Civ. No. SX-15-CV-278, 2018 V.I. LEXIS 97, at * 4 (V.I. Super. Ct. Sept. 19, 2018).

[21] *Id.* (quoting from *Rivera-Moreno v. Gov't of the Virgin Islands*, 61 VI. 279, 311 (V.I. 2014) (internal citations and

Court can deny the writ of habeas corpus if the petitioner has not met the *prima facie* standard."[22]

### B. *Miranda* rights.

¶10    As this Court outlined in *People of the V.I. v. Norman*:[23]

> In *Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the court held:

> when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has a right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement.

> Moreover, in *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S. Ct. 321, 46 L. Ed. 2d 313 (1975), the court held that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under Miranda [sic] on whether his 'right to cut off questioning' was 'scrupulously honored.'" In determining whether a defendant's "right to cut off questioning" was honored, the Supreme Court in *Mosley* considered the following: 1) the amount of time that passed before questioning resumed; 2) whether the next interrogation was conducted by the same officer Defendant had informed that he was invoking his right to remain silent; 3) whether Defendant was given a new set of *Miranda* warnings at the subsequent interrogation; 4) and whether the second interrogation addressed a crime that had not "been a subject of the earlier interrogation." *Id.* at 106. However, it is important to note that these factors are not "necessarily dispositive." *United States v. Lafferty*, 503 F.3d 293, 303 (3d Cir. 2007).

> Additionally, in *People of the V.I. v. Lewis*, 50 V.I. 905, 910 (D.V.I. 2008), the

---

quotations omitted).

[22] *Id.*

[23] Super Ct. Case No. ST-2010-CR-00065, 2010 V.I. LEXIS 37 (V.I. Super. Ct. May 24, 2010).

court concluded that "[t]he scrupulously honored standard requires the government to abstain from questioning a suspect unless he (1) initiates further conversation; and (2) waives the previously asserted right to silence."[24]

### C. Prosecutorial misconduct.

¶11     In *Davis v. People*,[25] the Virgin Islands Supreme Court laid out the legal standard and analysis of prosecutorial misconduct claims:

> A claim of prosecutorial misconduct during trial requires a court to resolve two questions: whether the prosecutor's comments were in fact improper and, if so, whether the remarks prejudiced the defendant's right to a fair trial. After considering the entire trial proceeding, reversal will result if the misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process.
>
> In analyzing whether reversal is warranted, this Court considers the scope of the objectionable comments and their relationship to the entire proceeding, the ameliorative effect of any curative instructions given, and the strength of the evidence supporting the defendant's conviction. When a jury is given an instruction, including a curative instruction, the presumption is that the jury will follow the instruction. If we determine that the People did engage in misconduct, we will reverse unless the error is harmless. Under the harmless error analysis, if the error is constitutional, we will affirm only if we find that the error is harmless beyond a reasonable doubt, while if the error is non-constitutional, we will affirm when it is highly probable that the error did not contribute to the judgment.[26]

### D. Ineffective assistance of counsel.

¶12     In *Powell v. People*,[27] the Virgin Islands Supreme Court stated that to prevail on a claim of ineffective assistance of counsel, the petitioner must show that "counsel's performance fell below an objective standard of reasonableness and that counsel's performance prejudiced [him or her] resulting in an unreliable or fundamentally unfair outcome in the proceeding."[28] The Virgin Islands Supreme Court went on to note that the "'proper measure of [an] attorney['s] performance … [is] simply reasonableness under prevailing professional norms,' and, therefore, review of counsel's performance is generally highly deferential, as there is a presumption that 'under the circumstances,'

---

[24] *Id.* at *5-7.
[25] 69 V.I. 619 (V.I. 2018).
[26] *Id.* at 628 (citations omitted).
[27] 59 V.I. 444 (V.I. 2013).
[28] *Id.* at 453 (quoting *Stanislas v. People*, 55 V.I. 485, 494 (V.I. 2011)).

the challenged action 'might be considered sound trial strategy.'"[29]

### E. Improper jury instructions.

¶13 In *Roebuck v. Gov't of the V.I.*,[30] the Virgin Islands Supreme Court stated that absent a timely objection, improper jury instructions are reviewed for clear error.[31] The Virgin Islands Supreme Court further stated that "in determining the adequacy of any jury instruction, the court 'must examine the jury instructions as a whole to determine whether [a particular instruction] was misleading or inadequate to guide the jury's deliberation.'"[32] Lastly, the Virgin Islands Supreme Court has held "that 'the jury is required to be guided by the specific final jury instructions on the elements of . . . [a] crime, and not guided by reference to or reliance upon the elements of the crime being mentioned in a different context elsewhere in the trial record.'"[33]

### III. ANALYSIS

### A. Smith's petition is procedurally compliant.

¶14 Smith writes that he is the person for which relief is sought and that he is imprisoned at the Citrus County Detention Facility in Lecanto, Florida.[34] He does not name the officer or person by whom he is imprisoned or otherwise describes them within the body of his Petition. However, in his Affidavit In Support of In Forma Pauperis In Matter of Writ of Habeas Corpus that accompanies his Petition, and the accompanying letters he has filed regarding his Petition, he does name Wynnie Testamark, Director of the Bureau of Corrections, in the caption. The Court, as Smith proceeds *pro se*, will deem this requirement satisfied.[35] Smith also alleges his imprisonment to be illegal and states the grounds for what the alleged illegality consists of. Namely, Smith alleges violations of his *Miranda* rights, prosecutorial misconduct, ineffective assistance of counsel, and improper jury instructions. Smith includes a signed oath at the end of the petition declaring and certifying that the information is true and accurate. Therefore, Smith's Petition satisfies the requirements of 5 V.I.C. § 1302.

### B. Alleged *Miranda* violations do not meet the *prima facie* standard.

¶15 Smith premises his *Miranda* right violation on the alleged facts that after signing a waiver

---

[29] *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 688-689 (1984)).

[30] 2021 VI 13.

[31] *Id.* at ¶ 14 (citing first *David v. People*, 2020 VI 8; then citing *Rodriguez v. People*, 2019 VI 19; lastly citing *Wallace v. People*, 2019 VI 24).

[32] *Id.* (citing first *Cascen v. People*, 60 V.I. 392, 413 (V.I. 2014); then *Prince v. People*, 57 V.I. 399, 409 (V.I. 2012)).

[33] *Id.* (quoting *Nanton v. People*, 52 V.I. 466, 481 (V.I. 2009)).

[34] Pet'r's Mot. 1.

[35] The Court should liberally construe filings by *pro se* parties. *See, Carrillo v. CitiMortgage, Inc.*, 63 V.I. 670, 679 (V.I. 2015) (quoting *Etienne v. Etienne*, 56 V.I. 686, 691 n.5 (V.I. 2012)).

and being asked two (2) questions he was allegedly asked additional questions while he was being led away. These questions are allegedly 'whether he drove a green Suzuki Esteem' and 'whether his nickname is "Captain."'[36] However it is not borne out that there was a *Miranda* violation here, and assuming *arguendo* there was it was harmless or otherwise used for impeachment purposes. Smith does not say what he said in response to the questions, just that he had been *asked* them. He alleges these were brought up at trial in further violation of his *Miranda* rights.[37] Smith was informed of his rights and waived them. Smith argues that his invocation of a lawyer makes his willful answers to two (2) questions, regarding his nickname and whether he drove a certain vehicle, inadmissible.[38]

¶16    Smith attaches to his petition pages 240 and 246 of Volume I of the Trial Transcript, involving his *Miranda* waiver form. The transcript of the case indicates that on and between these pages, Detective Mario Stout ("Stout") was questioned as to whether Smith waived his *Miranda* rights and whether Smith signed the waiver form along with the present officers; that the prosecution sought to enter the signed waiver into evidence; that defense counsel objected to the entering of the waiver under the impression it was being entered as a written statement; that the prosecution stated they are questioning the officer as to the oral statement Smith gave, not entering the paper as a written statement, but rather to show that Smith waived his *Miranda* rights; that the Court allowed testimony on the oral statement as whether or not the car was operable as it would be a "statement consistent with his mother" and went to credibility; and that defense counsel considered it a collateral issue.[39] The Court then entered as People's Exhibit Number 29: the signed waiver form.[40]

¶17    On cross-examination, Smith's attorney crossed Stout, confirming that Smith had waived his rights and asking him about the oral statement: that the officers heard Smith say he drove a green Suzuki; that he was at Estate Thomas, that his mother owned a Champagne Mazda; that there was an alibi offered that he was at a party in Estate Thomas; and that there was no testimony anyone at the crime scene saw a green Suzuki.[41]

¶18    Smith testified during the trial. On direct examination he testified:

Q: Did you also sign a waiver?
A: Yes.
Q: And what statement did you make, if any, on that day?
A: Well, before he began to write down anything,—
Q: You say "he." Who's he?

---

[36] Pet'r's Mot. 5.

[37] As the Court notes *supra* n. 9, Smith's account that he and Stout were asked the two (2) questions he was asked *before* invoking his *Miranda* rights by asking for an attorney is not a *Miranda* violation on its face.

[38] From the trial transcript it appears that Smith told the officer that he was driving a green Suzuki the night of the murder.

[39] Trial Tr. Volume I 239-46.

[40] Trial Tr. Volume I 249.

[41] Trial Tr. Volume I 250-52.

A: Detective Stout. He asked me if I own a green car, and I told him yes. And then he asked me who the other car in the yard for. I tell him that's my mother car. The champagne Mazda. But when he initially started to do the questioning he asked me if I knew Kelmon David, and I said yes. But at that point I told him that I want to see my lawyer. So questioning stopped right there.  
Q: So you did ask to see—  
A: Yeah, I did. Yes, I did.  
Q: You gave no further statement at the time?  
A: No, no I gave them no further statement.[42]

¶19 On cross-examination the following exchange took place:

Q: So Corporal Stout testified here from a report that he did that on the night Kelmon David was killed you were driving—you said you were driving a green Suzuki Swift. You're saying he's lying?  
A: Yes, because the green Suzuki Esteem I have doesn't work from since 2004. I told him I own a green Suzuki Esteem,  
Q: Mr. Smith, —  
A: Yes.  
Q:—you told Corporal Stout—well, you say you didn't tell him about the green Suzuki even though he said you did? But you told him that you were—  
Attorney Bethel: That's not a correct characterization of his testimony. His testimony was he said he owned a green Suzuki. He was not driving a green Suzuki at the time.  
Attorney Dick: My understanding is that the Corporal testified that he told him he was driving one that night. He denies that.  
The Court: All right. Then it's cross-examination. So he has that authority to ask him if that is what he said. Overruled.[43]

¶20 Smith's own testimony is that he waived his *Miranda* rights, was asked about the cars before Stout started writing anything down, he requested an attorney after Kelmon David was brought up, and then he gave no further statement after that. However, even if the account given by Smith in his Petition, as opposed to his sworn testimony at trial, is true, habeas relief would still not be warranted. It is not clear how Smith phrased his invocation of his right for counsel and whether it was clear and unambiguous that he wished questioning to stop.[44] Smith does not explain why the detective "should have known" that Smith would answer those questions as Smith *did* know at that time he had a right to remain silent, having just been informed of his *Miranda* rights. The setting he was asked in was

---

[42] Trial Tr. Volume III 209-10.  
[43] Trial Tr. Volume III 216-17.  
[44] *People v. Hart*, 47 V.I. 407, 414-15 (V.I. Super. Ct. 2006) (citing cases where the request for an attorney was not clearly unambiguous and unequivocal).

less coercive since he was being escorted away from the interrogation room and only in the presence of one officer instead of multiple. Further, these questions do not directly relate to the crime, but have to do with Smith himself.

¶21    Additionally, the question as to Smith's nickname could be considered a "booking" question, as "alias" is a part of the intake form.[45] Unlike an alias in a criminal conspiracy, a *nom de guerre*, or a mafia moniker, which are often attempts to disguise its user's identity during the commission of a crime or in war, Smith's nickname is a part of his identity.[46] It would have been how he was commonly addressed, known, and identified by the public, as is customary in the United States Virgin Islands and the Caribbean more widely.[47] However, assuming again *arguendo* that there was a *Miranda* violation, at the very least the violation was harmless as he was identified by others during his trial as "Captain" and the prosecution did not need to rely on the alleged violation to identify Smith as "Captain." Indeed, during Smith's trial, Smith as well as several other individuals were identified by witnesses by only their nicknames.[48] For example, during Mr. Niabingie Parker's testimony, this following exchange took place:

> Q: What was the other name that you knew him by?
> A: Captain.
> Q: And how often did you refer to him as Captain?
> A: That is what I used to always refer to him as Captain.
> Q: Did you ever refer to him as Kishawn?
> A: Nah
> Q: Just Captain?
> A: Just Captain.
> Q: Any other nick name?
> A: No.[49]

---

[45] *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990) (establishing the "booking question" exception to *Miranda*).

[46] *See, e.g.*, RESERVOIR DOGS (Live America Inc./Dog Eat Dog Productions 1992) (in which the members of a diamond heist are only known to each other by their aliases: Mr. Brown, Mr. White, Mr. Blonde, Mr. Blue, Mr. Orange, and Mr. Pink).

[47] *See* Alscess Lewis-Brown, *Nicknames thrive wherever there are people and stories, from Dickens to Twain to us*, V.I. DAILY NEWS (Feb. 27, 2019), https://www.virginislandsdailynews.com/opinion/nicknames-thrive-wherever-there-are-people-and-stories-from-dickens-to-twain-to-us/article_f18ed8ec-5cb2-507f-a59b-9d7a5693a074.html ("It seems that Caribbean people are not the only ones that like to construct nicknames.").

[48] *See, e,g,*, Trial Tr. Volume II 126 ll. 4-10:

> Q: You know him as?
> A: Pie.
> Q: Do you know his full name?
> A: Nah, I don't know his full name like that.
> Q: You know him as Pie?
> A: Yeah.

[49] Trial Tr. Volume II 119-20.

¶22    Like Smith's nickname, the question about the green Suzuki does not directly relate to the crime, but rather went to the veracity of Smith's alibi. Smith testified directly about owning the green car. Further, rather than implicating him in the crime, the information about the green Suzuki went to Smith's credibility on the stand and the veracity of his alibi. It is permissible to impeach a testifying defendant with information obtained in violation of *Miranda*.[50] The prosecutor highlighted this use in closing arguments:

> We know the Defendant, when he returned from the United States, after having months to think about what, if anything, he's going to say, he tells Detective Stout the night he is arrested for murdering Kelmon David, I was driving a green Suzuki the night of February 4, 2006. His own mother told us that's not possible. The car had been mashed up well before that date.[51]

¶23    Smith's trial, and the evidence presented, involved multiple pieces of physical evidence as well as testimony from witnesses, investigating officers, and an expert medical examiner. His guilty verdict did not hinge on his admission as to his nickname or the type of vehicle he claims to have owned or driven. Further, the Court finds that these admissions were harmless as they did not directly implicate Smith in the crime, nor would they have had any effect on the jury verdict.

### C.    Alleged prosecutorial misconduct and improper jury instructions challenges do not meet the *prima facie* standard.

¶24    On cross-examination, the prosecutor began to ask: "Q: You never mentioned that you were with other — you never mentioned being with —" at which point the judge ordered a sidebar.[52] During the sidebar, the judge stated:

> So, you understand that I'm not keeping you from asking him any direct questions now that he is on the stand. But the constitutional problem that I'm having, you can't create an inference that he didn't say certain things at the time of his arrest . . . Now that he is on the stand you can ask him any question you want. But you can't refer, well, you didn't say this. You didn't say that. Because that is constitutionally impermissible . . . . I would have to give an instruction that anything that you asked him as to what he may not have asked—said to the officer, after he, you know, had invoked his right to an attorney, is stricken. But that can't keep you from asking him a direct question. Not that you didn't say this

---

[50] *See, e.g.*, *State v. Harts*, 7 S.W.3d 78, 85 (Tenn. Crim. App. 1999) (citing first *Harris v. New York*, 401 U.S. 222, 225-26 (1971); then *State v. Hopper*, 695 S.W.2d 530, 538 (Tenn. Crim. App. 1985) ("A statement that is inadmissible against a defendant in the state's case-in-chief because of a *Miranda* violation may properly be used for impeachment purposes to attack the testifying defendant's credibility.").
[51] Trial Tr. Volume IV 36.
[52] Trial Tr. Volume III 218.

to the Detective. You didn't say that. Ask him straight out now whatever you want to ask him.[53]

¶25     The judge then gave the jury curative instructions that stated in part:

> So to the extent that there was any question that was made by the Government as to what he didn't say to the Officer after he invoked those rights, that is stricken. He has no requirement to say anything after that. So there can be no implication that he didn't say certain things to the Officer after he invoked his rights. So, please understand that there can be no inference after he said he wanted an attorney.[54]

¶26     Later during cross-examination, this exchange took place: "Q: Okay. Clarissa is incorrect? And Corporal Stout is incorrect when—about the green Suzuki Swift? A: No. I didn't tell you Clarissa was incorrect. I said I just said that but I also said that—."[55] Smith did not even address the question about Stout.

¶27     The prosecutor had begun to ask a negative question with an impermissible inference ("you never mentioned being with") and so the judge stepped in. The prosecutor did not violate the judge's instructions after they were given. Smith was on the stand and the prosecutor is permitted to ask direct questions to Smith about his testimony, which mentioned owning the green car, and Stout's testimony about a part of Smith's alibi concerning driving a green Suzuki Swift that night. What the judge's instructions plainly forbade the prosecutor from doing was questioning Smith on the stand as to what he did not say to Stout and trying to create an appearance of guilt or an inference as to some fact based on the fact that Smith invoked his right to counsel or did not answer a particular question. As the judge stated during sidebar "if they say they want to be silent, if they don't want to say anything, if they invoke their rights, you can't comment on why they didn't say things."[56] At no point did the prosecutor violate this directive. Rather, the prosecutor was challenging Smith's credibility and the veracity of his alibi drawn from permissible testimony. The jury instruction itself contains no clear error and is an accurate reflection of the law.

¶28     Further, the prosecutor's statements during closing argument were not in violation of Smith's constitutional rights. As explained above, the reference to the green Suzuki Swift, which came out in the testimony of Stout, Smith, and Smith's mother, was not improper. Smith also objects to the prosecutor bolstering the credibility of a witness during closing arguments and attaches page 36 of Volume IV of the Trial Transcript that contains the prosecutor stating:

---

[53] Trial Tr. Volume III 223-24.
[54] Trial Tr. Volume III 224-25.
[55] Trial Tr. Volume III 232.
[56] Trial Tr. Volume III 219.

> And you heard the words of a young woman, a young girl, Marysia Stridiron. That young girl Marysia Stridiron had no motive to lie. No motive to lie, to come in here and tell us what she saw. Nothing to gain by telling us that. And, in fact, ladies and gentlemen, I think we're all well aware, much to lose, much to be concerned about by sitting in that stand . . .[57]

¶29    The Supreme Court of the United States Virgin Islands has endorsed the Third Circuit's understanding of vouching: "vouching constitutes an assurance by the prosecuting attorney of the credibility of a government witness through personal knowledge or by other information outside of the testimony before the jury."[58] In *Farrington v. People*, the prosecutor stated: "Ladies and Gentlemen of the Jury, we submit that it would be so highly coincidental that — let me put it this way. Why would Trevorn Lake want to make up a story—."[59] In *United States v. Walker*,[60] the case from the Third Circuit, the prosecutor stated:

> Now, ask yourselves what motivation would Officer Robert Scott and former Officer Raymond Dubois have to come in here and lie to you. What motivation. I submit to you that they have no motivation to lie to you. I submit to you that you can determine, using your common sense and your judgment, you can determine the credibility of those two and the only two eyewitnesses to the search . . . .[61]

¶30    Recently, this Court considered whether the following statement in the case of *People v. Stuart*[62] was impermissible vouching:

> And I submit to you, Lisa Toussaint doesn't have any reason to lie. Lisa Toussaint lives in New York. Lisa Toussaint is 17 years removed from this case and doesn't live in St. Thomas. Are we to believe that she came down here from New York just to lie, or is it more reasonable that she came down here because she remembers what occurred that night and why it struck her as strange?[63]

¶31    In all three (3) cases, the courts found that the statements were not impermissible vouching for the credibility of a witness. As this Court explained in *Stuart*, "the People were not assuring the jury that the witness . . . was credible or that the People had some inside knowledge not in evidence for why the jury should consider [the witness] credible" but rather "the People were providing an

---

[57] Trial Tr. Volume IV 36.
[58] *Farrington v. People*, 55 V.I. 644, 656 (V.I. 2011) (citing *United States. v. Walker*, 155 F.3d 180, 184 (3d Cir. 1998)).
[59] *Id.*
[60] 155 F.3d 180 (3d Cir. 1998).
[61] *Id.* at 184.
[62] 2022 VI Super 93U.
[63] *Id.* at ¶ 38.

argument for why the jury might find her credible."[64] Likewise in the instant case, the prosecutor did not allude to some information outside the evidence or personal knowledge about why the jury should find Marysia Stridiron credible, but provided an argument for why she should be believed— she had no bias or thing to gain from her testimony and only something to lose—potentially her life. Smith has not shown that the prosecutor impermissibly vouched for the witnesses credibility, rather, the prosecutor made a fairly standard argument for why the jury should credit the witness's testimony. Thus, Smith has not made a *prima facie* showing of prosecutorial misconduct or improper jury instruction.

> **D.      Ineffective assistance of counsel challenge does not meet the *prima facie* standard.**

**¶32**     As the Court finds that any purported *Miranda* violations are, at the very least, harmless, the failure to object to them cannot constitute ineffective assistance of counsel. Further, whether or not to make an objection is a quintessential part of trial strategy and Smith fails to detail how counsel's failure to object resulted in a fundamentally unfair outcome, particular when Smith himself testified that he told the detective he owned a green car.[65] If it was not ineffective assistance of counsel at the trial level, it follows that it cannot be ineffective assistance of counsel for Smith's appellate counsel to have failed to raise an ineffective assistance of counsel claim at the appellate level. Therefore, Smith has not made a *prima facie* showing of ineffective assistance of counsel.

### IV. CONCLUSION

**¶33**     Smith was arrested in August 2006, and sentenced in April 2007 for, *inter alia*, second degree murder. Smith already appealed his conviction, which was upheld by the Virgin Islands Supreme Court in 2009. Smith filed his Motion for Extraordinary Writ of Habeas Corpus on September 17, 2020, alleging constitutional violations consisting of *Miranda* rights violations, prosecutorial misconduct, ineffective assistance of counsel, and improper jury instructions. The Court construed Smith's Motion as a Petition for Writ of Habeas Corpus. While liberally construing the Petition and finding it compliant, the Court finds that Smith did not make a *prima facie* showing of any violation. Therefore, Smith's Petition will be denied.

**¶34**     Accordingly, it is hereby

        **ORDERED** that the Petitioner Kishawn Smith's Motion for Extraordinary Writ of Habeas Corpus, filed September 17, 2020 is **DENIED**; and it is further

---

[64] *Id.* at ¶ 41.

[65] *Williams v. People*, 2024 VI 2 ("Although he questions the competency of his trial counsel's strategy, which apparently involved counsel's failure to object to the admission of allegedly prior inconsistent statements, Williams fails to suggest why the failure to object was an unsound trial strategy.").

**ORDERED** that a copy of this Memorandum Opinion and Order shall be mailed to Kishawn Smith, #19-1873, at Citrus County Detention Facility, 2604 Woodland Ridge Drive, Lecanto, FL 34461, with the following notation on the envelope: **"LEGAL MAIL-please open in presence of inmate only;** and a copy thereof shall be directed to Assistant Attorney General Ian S.A. Clement.

DATED: May **20** , 2024            _____

                                           **DENISE M. FRANCOIS**
                    Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY: _____
     **DONNA D. DONOVAN**
     Court Clerk Supervisor **05** / **30** / **2024**

**FILED**
May 20, 2024 04:45 PM
ST-2020-MC-00034
TAMARA CHARLES
CLERK OF THE COURT

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## District of St. Thomas/St. John

**Kishawn Smith,**

        **Petitioner**

**v.**

**Government of the Virgin Island et al,**

        **Respondent.**

Case Number: **ST-2020-MC-00034**

Action: **Writ of Habeas Corpus**

## NOTICE of ENTRY
## of
## **(2) ORDERS**

**To:** Kishawn Smith (via USPS)

Ian S. A. Clement, Esq (via Email)

**Please take notice that on May 20, 2024**

**a(n)** _____ **(2) ORDERS** _____

dated **May 20, 2024** was/were entered

**by the Clerk in the above-titled matter.**

**Dated:** **May 20, 2024**

**Tamara Charles**

_____

**Clerk of the Court**

By:

**Nicole Smith**

**Court Clerk II**